# EXHIBIT A

Prepared by: J. LEGE

**Multistate**

# NOTE

FHA Case No.

LOAN #:

October 25, 2001
[Date]

1132 FERRO AVENUE BESSEMER, AL 35020-
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
COUNTRYWIDE HOME LOANS, INC.
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED FOUR THOUSAND TWENTY EIGHT and 00/100
Dollars (U.S. $ 104,028.00      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of   SIX & ONE-HALF
percent (  6.500  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
December 01   , 2001. Any principal and interest remaining on the first day of November , 2031 , will be due on
that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at
4500 PARK GRANADA, CALABASAS, CA 91302-1613
or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $657.53       . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other
items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge
shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day
of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to
those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of
this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the
amount of FOUR            percent (   4.000   %) of the overdue amount of each payment .





-1R (9901).04    CHL (07/01)     VMP MORTGAGE FORMS - (800)521-7291

FHA Multistate Fixed Rate Note - 10/95
Initials:



BANA 0697

BANA 0698

 

CASE #: ▮▮▮▮▮▮                                      LOAN #: ▮▮▮▮▮▮

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Michael Adams_ _____ (Seal)        _Natalie Adams_ _____ (Seal)
MICHAEL ADAMS                  -Borrower    NATALIE ADAMS              -Borrower

_____ (Seal)            _____ (Seal)
                         -Borrower                                  -Borrower

PAY TO THE ORDER OF

_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY_____
MERCEDES JUDILLA
ASST. SECRETARY

BANA 0699

# EXHIBIT B

TRUE & CERTIFIED
COPY

——————————————— [Space Above This Line For Recording Data] ———————————————

[Case #]                                                            [Doc ID #]

**State of Alabama**

# MORTGAGE

MIN 1000157-0000598508-6

THIS MORTGAGE ("Security Instrument") is given on OCTOBER 25, 2001 . The Grantor is
MICHAEL ADAMS, AND NATALIE ADAMS,

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE HOME LOANS, INC.
("Lender") is organized and existing under the laws of NEW YORK , and has an address of
4500 PARK GRANADA, CALABASAS, CA 91302-1613
Borrower owes Lender the principal sum of
ONE HUNDRED FOUR THOUSAND TWENTY EIGHT and 00/100
Dollars (U.S. $ 104,028.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 01, 2031 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in
JEFFERSON                County, Alabama:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Michael Adams is one and the same person as M. Shawn Adams.

Natalie Adams is one and the same person as Natalie D. Adams.



which has the address of 1132 FERRO AVENUE, BESSEMER
[Street, City]
Alabama    35020-       ("Property Address");
[Zip Code]

**FHA Alabama Mortgage with MERS - 4/96**        Page 1 of 6                    Initials:
**(VMP)** -4N(AL) (0102)    CHL (02/01)      VMP MORTGAGE FORMS - (800)521-7291          Amended 2/01



BANA 0141

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

Initials: *M.S.A*
*A.O.G.*

**BANA 0142**

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of

BANA 0143

insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

BANA 0144

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in JEFFERSON                                County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☒ Other [specify] |
| ☐ Planned Unit Development Rider | ☐ Graduated Payment Rider | EXHIBIT "A" – LEGAL DESCRIPTION |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____        *Michael Adams* _____ (Seal)
                                MICHAEL ADAMS                        -Borrower

_____        *Natalie Adams* _____ (Seal)
                                NATALIE ADAMS                        -Borrower

_____        _____ (Seal)
                                                                     -Borrower

_____        _____ (Seal)
                                                                     -Borrower

BANA 0145

CASE #: ███████

STATE OF ALABAMA,          JEFFERSON          DOC ID # ████████

County ss:

On this      25th      day of      October, 2001      , I, the undersigned hereby certify that , a Notary Public in and for said county and in said state,

Michael Adams and wife, Natalie Adams

, whose name(s) are

signed to the foregoing conveyance, and who      are      known to me, acknowledged before me that, being informed of the contents of the conveyance,      they      executed the same voluntarily and as      their act on the day the same bears date.

Given under my hand and seal of office this      25th      day of      October, 2001

My Commission Expires:

11-29-2003

_____
Notary Public

Prepared By:
J. LEGE
COUNTRYWIDE HOME LOANS, INC.
3443 COLONNADE PARKWAY, BIRMINGHAM, AL 35243-2356

BANA 0146

Prepared by: J. LEGE

**COUNTRYWIDE HOME LOANS, INC.**
BRANCH #211
3443 COLONNADE PARKWAY
BIRMINGHAM, AL 35243-2356
(205)967-0585
Br Fax No.: (205)967-4980

DATE:       10/25/2001
CASE #:     ▮▮▮▮▮▮▮▮
DOC ID #:   ▮▮▮▮▮▮▮▮
BORROWER: MICHAEL ADAMS
PROPERTY ADDRESS: 1132 FERRO AVENUE
                  BESSEMER, AL. 35020-

### LEGAL DESCRIPTION EXHIBIT A

LOT 14, IN BLOCK 24, AS SHOWN BY MAP OF
TENNESSEE LAND COMPANY'S EASTERN VALLEY
SUBDIVISION, RECORDED IN THE BESSEMER
DIVISION OF THE OFFICE OF THE JUDGE OF
PROBATE OF JEFFERSON COUNTY, ALABAMA, IN
MAP BOOK 2, PAGE 63.

FHA/VA/CONV
Legal Description Exhibit A
2C4041XX (08/01)





**BANA 0147**

# EXHIBIT C

Recording Requested By:
**Bank of America**
Prepared By:
**Aida Duenas**
**888-603-9011**
**450 E. Boundary St.**
**Chapin, SC 29036**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID# 14058745018835

Property Address:
**1132 Ferro Ave**
**Bessemer, AL 35020-8611**
AL0-AM 14389479          8/2/2011



20110808000785970   1/1
Bk: LR201162 Pg:8264
Jefferson County,Alabama
I certify this instrument filed on
08/08/2011 11:07:56 AM AS
Judge of Probate- Alan L King

MIN #: 1000157-0000598508-6          This space for Recorder's use          MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME   LOANS SERVICING LP** whose address is **3900 WISCONSIN AVENW, WASHINGTON DC 20016** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:          **COUNTRYWIDE HOME LOANS, INC.**
Original Borrower(s):     **MICHAEL ADAMS, AND NATALIE ADAMS**
Date of Mortgage:         **10/25/2001**
Original Loan Amount:     **$104,028.00**
Recorded in Jefferson/Bessemer District, AL on: **11/6/2001**, mortgage book **200163**, page **2590** and instrument number N/A

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
___8-2-2011___

                              MORTGAGE ELECTRONIC REGISTRATION
                              SYSTEMS, INC.

                              By: ___Youda Crain___
                              **Youda Crain, Assistant Secretary**

State of California
County of Ventura

On August 2, 2011 before me, ___Jennie M. Kogak___, Notary Public, personally appeared Youda Crain, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

                              JENNIE M. KOGAK
                              Commission # 1864075
                              Notary Public - California
                              Los Angeles County
                              My Comm Expires Oct 3, 2013

Notary Public: ___Jennie M. Kogak___          (Seal)
My Commission Expires: ___10-3-13___

000011111          ADAMS          M

610          D8  001  003

20110808000785970   1/1
Bk: LR201162 Pg:8264
Jefferson County,Alabama
08/08/2011 11:07:56 AM AS
Fee - $5.00

Total of Fees and Taxes-$5.00
MMBESS

**BANA 0192**

# EXHIBIT D


**Countrywide®**
HOME LOANS

Send Correspondence to:
P.O. Box 260599 PTX-34
Plano, TX 75026-0599

Send Payments to:
P.O. Box 660694
Dallas, TX 75266-0694

September 9, 2004

Michael & Natalie Adams
and/or Head of Household
1132 Ferro Avenue
Bessemer, AL 35020-0000

AVISO IMPORTANTE PARA PERSONAS DE
HABLA HISPANA. ESTE ES UN AVISO MUY
IMPORTANTE. SI NO ENTIENDE EL
CONTENIDO, OBTENGA UNA TRADUCCION
INMEDIATAMENTE. SI USTED NO RESPONDE
DENTRO DE VEINTE (20) DIAS PUEDE SER
QUE LO HAGAN MUDAR DE LA CASA O
APARTAMENTO EN DONDE VIVE.

FHA Case No ▮▮▮▮▮▮▮
Account No.: ▮▮▮▮▮▮▮

Property: 1132 Ferro Avenue
Bessemer, AL 35020-0000

Dear Michael & Natalie Adams:

The mortgage for the property in which you are living is about to be foreclosed (sometimes
referred to as repossessed). We expect that ownership of the property will be transferred to
Countrywide Home Loans probably within the next 60 to 90 days. Shortly thereafter, it is
probable that ownership will be transferred to the Secretary of Housing and Urban Development
(HUD).

HUD generally requires that there be no one living in properties for which it accepts ownership
unless certain conditions are met. We have enclosed a copy of those conditions in Attachment
1. These conditions should be read carefully to help you decide whether you wish to apply to
continue living in the house.

If you wish to submit a request to continue to live in this property, after HUD becomes owner,
your written request must be received by HUD within 20 days of the date at the top of this letter.
Oral requests are not permitted. We recommend that you use the enclosed Attachment 2,
"Request for Occupied Conveyance," in making your request as it gives HUD information it
needs to make its decision. If you have additional information which you wish to include with
your request, you may write it on the second page of the form or on additional pages which can
be attached to the form. Also, please fill out boxes 1, 7 and 8 of the enclosed Attachment 3,
"Request for Verification of Employment," and send it to HUD with your request. Your request
must be sent to the Chief Property Officer at the following address:

U.S. Department of HUD
Best Assets,3420 Norman Berry Dr,Suite 600
Atlanta, GA 30354

If you believe that you can meet the condition for a temporary, permanent, or long term illness
or injury (see Item 1 (d) in Attachment 1, "Conditions for Continued Occupancy"), you should
say so in your request and include documentation supporting your claim. This documentation
must include a projection of the date that you could be moved without severely aggravating the
illness or injury and a statement by a State-certified physician establishing the validity of your
claim.

HUDOCPDY 12/21/1999

**BANA 0330**

If HUD approves your request to remain in the property, it will only be for a temporary period. See Attachment 4, "Temporary Nature of Continued Occupancy."

If HUD denies your request, you will be given an opportunity to ask that the denial be reconsidered and to furnish information relating to the reasons for the request being denied.

If HUD does not in fact become owner of this property, any decision it may make with respect to your continued occupancy will no longer apply.

If you have any questions concerning this notice, please contact the Chief Property Officer at the HUD Field Office shown above.

### IMPORTANT NOTICE

**YOU MUST REPLY TO THE HUD FIELD OFFICE IN WRITING WITHIN THE NEXT 20 DAYS OF THE DATE OF THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY BEFORE HUD BECOMES OWNER OF THE PROPERTY.**

Sincerely,

*David Glover*

David Glover
Loan Counselor
1-(800) 669-4578, Extension 9218

cc: Department of Housing & Urban Development

Attachments

**BANA 0331**



# EXHIBIT E

Recording Requested by
Countrywide Home Loans, Inc.

AND WHEN RECORDED MAIL TO:

Countrywide Home Loans, Inc.
Post Office Box 10266
Van Nuys, California 91410-0266
Attention:     Document Control

DocID#:

Space Above for Recorder's Use

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Agreement"), made on this September 27, 2004 between MICHAEL & NATALIE ADAMS (the "Borrower(s)") and Countrywide Home Loans, Inc., amends and supplements that certain (Mortgage/Deed of Trust) (the "Security Instrument") dated October 25, 2001 and recorded in the Book or (Liber), at page (s), or document number of the Official Records of the County of JEFFERSON, State of ALABAMA, and covers the real property specifically described in the Security Instrument and defined therein as the "Property", located at 1132 FERRO AVENUE, BESSEMER, AL 35020 as follows:

**and legally defined as set forth in the Security Instrument**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree to modify the Security Instrument as follows:

The fifth [and sixth] sentence[s] of the first paragraph of the Security Instrument is[are] hereby amended to read in its[their] entirety as follows:

Borrower owes Lender the principal sum of One Hundred Four Thousand Four Hundred Ninety Two Dollars and Sixty Five Cents (U.S. Dollars $104,492.65). [This debt is evidenced by Borrower's note dated the same date as the Security Instrument, as amended and restated as of the date herewith ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on April 01, 2032.]

The Borrower[s] shall comply with all other covenants, agreements and requirements of the Security Instrument. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Security Instrument shall remain unchanged, and the Borrower[s] and Countrywide Home Loans, Inc. shall be bound by, and comply with all of the terms and provisions thereof, as amended by this Agreement, and the Security Instrument shall remain in full force and effect and shall continue to be a first lien on the above-described property. All capitalized terms not defined herein shall have the same meanings as set forth in the Security Instrument.



610         LMA 001    001

**BANA 0221**

SIGNED AND ACCEPTED THIS __8th__ DAY OF __October_____
BY

_Michael Adams_ (signature)

_____
MICHAEL ADAMS

_Natalie Adams_ (signature)

_____
NATALIE ADAMS

_____          _____

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

State of ALABAMA, __Jefferson_____ County   On this __8th__ day of __Oct.____, 2004,
before me the undersigned , a Notary Public in and for said State,  personally appeared

____Michael Adams and Natalie Adams_____

known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) subscribed to the foregoing instrument and acknowledged that __Michael & Natalie__ Adams
executed the same.

Witness my hand and official seal.

My commission expires:
_8-23-05_

Signature _Lora V. Poole_
____Lora V. Poole____
Name (typed or printed)

BANA 0222

***********************************************************************

Countrywide Home Loans, Inc.

SIGNED THIS DATE:  11-11-04

BY: *Tamara Waller*
   Tamara Waller
   First Vice President, Loss Mitigation

State of Texas, Collin County, On this ___11th___ day of __November__, 2004, before me the undersigned, a Notary Public in and for said State, personally appeared Tamara Waller, First Vice President, Loss Mitigation, known to me, or proved to me on the basic of satisfactory evidence to be the person whose name subscribed to the foregoing instrument and acknowledged that she executed the same.

Witness my hand and official seal.

Signature *Jamie L. Crandell*

**Jamie L. Crandell**
Name(typed or printed)
My commission expires:



NOTARY PUBLIC
JAMIE L CRANDELL
My Commission Expires
August 30, 2006

**BANA 0223**

# EXHIBIT F

# AMENDED AND RESTATED NOTE

FHA Case No. 

Multistate

DocID#:

October 25, 2001

1132 FERRO AVENUE
BESSEMER, AL 35020

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Countrywide Home Loans, Inc. and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Four Thousand Four Hundred Ninety Two Dollars and Sixty Five Cents (Dollars U.S. $104,492.65) plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six Point Five percent (6.5%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on November 01, 2004. Any principal and interest remaining on the first day of April 01, 2032, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at
155 North Lake Avenue Pasadena, California 91109
or at such place a Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 680.44. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

Graduated Payment Allonge      Growing Equity Allonge      Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

Page 1 of 2

FHA Multistate Fixed Rate Note - 10/95
Initials: *M.a.*
*n.a.*

610  ████  N  001  002

**BANA 0701**

BANA 0702

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4% ) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this options without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

*Michael Adams*

MICHAEL ADAMS

*Natalie Adams*

NATALIE ADAMS

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS INC

BY _____
David A. Spector
Managing Director

BANA 0703

# EXHIBIT G

*100 Beecham Drive Suite 104*
*Pittsburgh, PA 15205*

**Notice Date: August 25, 2011**

MICHAEL ADAMS and NATALIE ADAMS

**Account No.:**
**Property Address:**
1132 FERRO AVENUE
BESSEMER, AL 35020

1132 FERRO AVENUE
BESSEMER, AL 35020

## ABOUT YOUR LOAN

# COMMITMENT TO MODIFY MORTGAGE

Account Number:
Property Address:

1132 FERRO AVENUE
BESSEMER, AL 35020

Original Note Amount: $104,492.65
Date of original mortgage: 31st day of October, 2001
(The foregoing is called the "Mortgage")

## WHAT THIS MEANS

This letter constitutes a commitment to modify the Mortgage (identified above), subject to the terms and conditions stated below. This letter contains our offer, and it permits you to accept this offer. When signed by you, this letter will constitute your agreement to these terms and conditions.

Our records indicate the Mortgage is currently in default. Although we are willing to modify the loan as described in this letter, please be advised that we will continue to pursue collection action. This action may include foreclosure. Upon completion of the modification process, which means all of the terms of this Commitment will have been met, your loan will be deemed current and we will cease collection activity on your loan. However, if you fail to sign this commitment or if you fail to perform as required in this commitment, we will complete our collection action, including foreclosure if necessary.

## WHAT YOU NEED TO DO

If you want to accept this commitment, you must sign this commitment and deliver it to Bank of America, N.A. by September 4, 2011. Failure to do so will result in the automatic withdrawal by Bank of America, N.A. of the offer to modify without further notice.

**BANA 0234**

## OFFER FOR MODIFIED MORTGAGE          Acct. No.:

We hereby offer to modify the Mortgage as follows. It will be called the "Modified Mortgage":

### Section A. Delinquent Balance.

The following shows your current delinquent balance as of the 1st day of October, 2011. This reflects the total amount needed to bring your loan current. The proposed modification will cure the below delinquency and bring your loan current; however, it may also increase your monthly payment.

| | |
|---|---|
| Delinquent interest accrued from November 1, 2010 to October 1, 2011 | $5,566.08 |
| Fees and Costs: | $0.00 |
| Delinquent Escrow: | $3,283.16 |
| Total Amount to be added to your Principal Balance: | $8,849.24 |

The NEW FIXED interest rate will be: 4.625%
The new modified principal balance will be: $103,128.67

The first regular monthly payment on the Modified Mortgage will begin on November 1, 2011 and the new payment amount will be $739.17. All other terms and conditions of the Mortgage will remain the same for the Modified Mortgage, including but not limited to provisions for late fees and Bank of America, N.A.'s right to pursue collection action for the default amount (including foreclosure). Please note that your total monthly payment is still subject to vary if your total monthly escrow payment increases subject to the terms of the mortgage.

The executed documents must be in our office on or before September 4, 2011, or such other date as we may choose at our sole discretion. In order to modify the Mortgage on that date, you must send the executed documents to: 100 Beecham Dr., Ste 104-HRM Pittsburgh, PA 15205, If you have questions, Loan consultants are standing by from 8:00 AM until 9:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday except holidays at 1-877-447-4002 Ext. 195547.

All borrowers, guarantors, endorsers or sureties on the original Mortgage must sign the Modified Mortgage and any other documents that we require. Any co-owner who was not a borrower on the original loan must sign the Modified Mortgage to consent to the modification, but will not become liable for repayment of the loan due to this consent.

BANA 0235

**Section B. Contingencies.** This offer is contingent on the following: Bank of America, N.A.'s offer to modify your mortgage is contingent upon Bank of America, N.A.'s verification that the title to the subject property is free from any defect, encumbrance, unauthorized conveyance or any other irregularity. A title search of the subject property will be initiated by Bank of America, N.A. upon your return of the executed Commitment to Modify Mortgage and the Modification Agreement. In the event the title search, or any other information, indicates any title irregularity, including but not limited to any unauthorized conveyance, or any superior or subordinate lien(s), whether voluntary or involuntary, the Commitment to Modify Mortgage and the Modification Agreement and their terms shall not be effective, binding, or enforceable against Bank of America, N.A., and Bank of America, N.A.'s offer to modify your mortgage shall be immediately revoked without further notice. Upon notification of a filing for protection under a Bankruptcy Stay, this Agreement will be terminated. This includes the filing by any party that has or may have interest in the property.

**Section C. Remit the First Payment Due under the modified terms in the amount $739.17 in CERTIFIED CHECK OR MONEY ORDER. Please use the enclosed self addressed envelope to provide payment.**

| | |
|---|---|
| First New Monthly Payment: | $739.17 |
| Interest: | $5,566.08 |
| Fees: | $0.00 |
| Escrow | $3,283.16 |

**Total Amount Due with Executed Agreement:**    $739.17

If you want to accept the offer for a Modified Mortgage upon the terms and conditions above, you must agree by signing the enclosed Modification Agreement which follows this commitment. Please note that the Modification Agreement must be properly notarized. The acceptance must be signed by each borrower and must be returned to us by September 4, 2011, otherwise, the offer will expire.

THANK YOU FOR YOUR BUSINESS

Bank of America, N.A. appreciates all your efforts and cooperation in this matter. If you have questions, Loan consultants are standing by from 8:00 AM until 9:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday except holidays at 1-877-447-4002 Ext. 195547.

**BANA 0236**

**ACCEPTANCE OF OFFER FOR MODIFIED MORTGAGE**     Acct. No.: 

We(I) are the borrower(s) on the Mortgage identified above. We agree to or acknowledge the following:

We accept all of the terms and conditions stated in the offer. We have failed to pay the Mortgage in accordance with its terms, and are now in default on the Mortgage. We acknowledge that this commitment for Modified Mortgage, even when signed by Bank of America, N.A. and us, will not prevent or prohibit Bank of America, N.A. from continuing collection action. Therefore, in the event we sign this commitment, but fail to fulfill any or all of its terms and conditions, then Bank of America, N.A. may complete any collection action already commenced without further notice to us, including foreclosure. This commitment will not be considered a waiver of or defense to lender's right to commence or continue any collection action. The terms of the Modified Mortgage will be as stated in Section A above. We will sign any documents necessary to complete the Modified Mortgage. We acknowledge that this commitment is contingent as provided in Section B and Section C of Bank of America, N.A.'s offer. Bank of America, N.A. shall determine whether the contingencies have been satisfied. If the new principal amount of the Modified Mortgage is more than the existing principal balance of the Mortgage, then we understand that amounts due such as unpaid interest, taxes, insurance or expenses have been added to the principal amount under the Modified Mortgage. The date for signing the documents and paying the amounts due will be September 4, 2011, or such other date that Bank of America, N.A. may select. All representations made by us pursuant to our request for the Modified Mortgage are true and have been and will be relied upon to Bank of America, N.A., and any breach of the representations will give Bank of America, N.A. the right to terminate this commitment and could result in the pursuit of other right and remedies by

I/We am/are now occupying the property as my/our primary place of residence. We have had the opportunity to consult with legal and/or tax counsel prior to agreeing to the foregoing, and have willingly agreed to these terms and conditions whether or not we elected to retain such counsel.

As evidenced by the signature below, the Borrower and the Lender agree to the foregoing:

*Michael Adams*                          *Natalie Adams*

MICHAEL ADAMS                            NATALIE ADAMS,

8/29/11                                  8/29/11

Date                                     Date



5 8 7 4 5 0 + U S C + C G V M T + 8 1 7 8 4 j

**BANA 0237**

# EXHIBIT H

, CERTIFIED COPY

**Recording Requested by/**
**After Recording Return To:**

Stewart Lender Services
Attn: Modification Recordation
9700 Bissonnet Street, Suite 1500
Houston, TX 77036

**This document was prepared by**
Home Retention Services, Inc.,
Modifications Department
9700 Bissonnet Street
Suite 1500
Houston, TX 77036
1.855.664.8124
By: Myra LeBlanc, VP

## LOAN MODIFICATION AGREEMENT

Order ID: 8972217
Loan Number:
Borrower: MICHAEL ADAMS and NATALIE ADAMS

Project ID: 283635

Original Loan Amount: $104,028.00
Recording Reference: See Exhibit 'B'



000011111   ADAMS   M

610   MOD 001   002

**BANA 0348**



Recording Requested by
Bank of America, N.A.
WHEN RECORDED MAIL TO:

Bank of America, N.A.
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024
DocID#: 06544444447105A

Space Above for Recorder's Use

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Agreement"), made on August 25, 2011 between MICHAEL ADAMS and NATALIE ADAMS (the "Borrower(s)") and Bank of America, N.A. ("Lender"), amends and supplements that certain (Mortgage/Deed of Trust) (the "Security Instrument") dated the 31st day of October, 2001 which covers the real and personal property described in the Security Instrument and defined therein as the 'Property', located at 1132 FERRO AVENUE, BESSEMER, AL 35020. The real property described being set forth as follows:

## SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree to modify the Security Instrument as follows:

The fifth [and sixth] sentence[s] of the first paragraph of the Security Instrument is[are] hereby amended to read in its[their] entirety as follows:

Borrower owes Lender the principal sum of one hundred three thousand one hundred twenty eight and 67/100, (U.S. Dollars) ($103,128.67). This debt is evidenced by Borrower's note dated the same date as the Security Instrument, as amended and restated as of the date herewith ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on October 1, 2041. The Borrower[s] shall comply with all other covenants, agreements and requirements of the Security Instrument. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in

WDGGovLnModAgree                    Page 1 of 3                    WDGLMAGM 7382 07/20/2007

BANA 0349

whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Security Instrument shall remain unchanged, and the Borrower[s] and Bank of America, N.A. shall be bound by, and comply with all of the terms and provisions thereof, as amended by this Agreement, and the Security Instrument shall remain in full force and effect and shall continue to be a first lien on the above-described property. All capitalized terms not defined herein shall have the same meanings as set forth in the Security Instrument.

SIGNED AND ACCEPTED THIS _29th_ DAY OF _August, 2011_

BY

_Michael Adams_
MICHAEL ADAMS

_Natalie Adams_
NATALIE ADAMS

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

State of _AL_, County of _JEFFERSON_ On this _29th_ day of _August_, _2011_ before me the undersigned, a Notary Public in and for said State, personally appeared

_Michael Adams_          _Natalie Adams_
known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged that _they_ executed the same.

Witness my hand and official seal.          Signature _Dora X. Poole_

_Lora Y. Poole_
Name (typed or printed)

My commission expires: _8-23-13_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
As evidenced by their signatures below, the Co-Owner(s) consent to this Modification of the Mortgage.

CO-OWNER(S)

_____          Dated:_____
Co-Owner(s) Signature

_____
Co-Owner(s) Name (typed or printed)

STATE OF _____

COUNTY OF _____

On _____ before me, _____

WDGGovLnModAgree          Page 2 of 3          WDGLMAGM 7382 07/20/2007

**BANA 0350**

Notary Public, personally appeared _____

_____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

Signature_____

### DO NOT WRITE BELOW THIS LINE.
************************************************************************************************************************
THIS SECTION IS FOR INTERNAL Bank of America, N.A. USE ONLY

SIGNED THIS DATE: _____9/7/11_____

BY: _____Chad Acon_____

NAME: _____Chad Acon_____

TITLE: _____Vice President_____

Bank of America, N.A.

STATE OF _Pennsylvania_ COUNTY OF _Allegheny_

On _9/7/11_ before me, _Matthew E. Masur_ Notary Public, personally appeared
_____Chad Acon_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Matthew E. Masur_ Signature

Matthew E. Masur
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Matthew E. Masur, Notary Public
West Mifflin Boro, Allegheny County
My Commission Expires Oct. 29, 2013
Member, Pennsylvania Association of Notaries

**BANA 0351**

**Recording Requested by/After Recording Return To:**

Stewart Lender Services
Attn: Modification Recordation
9700 Bissonnet Street, Suite 1500
Houston, TX 77036

Order ID: 8972217                                    Project ID: 283635
Loan Number:

---

## **EXHIBIT B**

Borrower Name: MICHAEL ADAMS and NATALIE ADAMS
Property Address: 1132 FERRO AVENUE, BESSEMER, AL 35020

This Modification Agreement amends and supplements that certain Mortgage/Deed of Trust (the Security
Instrument) recorded on 11/06/2001 as Instrument/Document Number: 200163/2590, and/or Book/Liber
Number: 0 at Page Number: 0 in the real records of JEFFERSON County, State of AL.

**Additional County Requirements:**
Original Loan Amount: $104,028.00
Current UPB: $103,128.67





0

# EXHIBIT I

# Bank of America 〰 Home Loans

Bank of America, N.A.
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Notice Date: August 25, 2011

MICHAEL ADAMS
NATALIE ADAMS
1132 FERRO AVENUE
BESSEMER, AL 35020

Account No: ▮▮▮▮

FHA Case No.: ▮▮▮▮

Property Address:
1132 FERRO AVENUE
BESSEMER, AL 35020

## AMENDED AND RESTATED NOTE
### State of Alabama

_____

Origination Date: 31st day of October, 2001

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means Bank of America, N.A. and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred three thousand one hundred twenty eight and 67/100 (Dollars U.S.) $103,128.67 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of four and 63/100, (4.625%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

#### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on November 1, 2011. Any principal and interest remaining on the October 1, 2041 will be due on that date, which is called the "Maturity Date."

#### (B) Place

Payment shall be made to Payment Processing  PO Box 650070  Dallas, TX 75265, or at such place as Lender may designate in writing by notice to Borrower.

#### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. 530.23. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

#### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

[ ] Graduated Payment Allonge      [ ] Growing Equity Allonge      [ ] Other [specify]

**BANA 0898**



## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first- class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

## 10. GROUNDS FOR ACCELERATION OF DEBT

(A) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under



this Note if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

*Michael Adams* Dated 8/29/11
MICHAEL ADAMS

*Natalie Adams* Dated 8/29/11
NATALIE ADAMS

# EXHIBIT J

**Bank of America**
Home Loans

Loan Number: ▮▮▮ 07/1995 - 09/2015
Statement Period: 09/25/2015
Date Prepared:

Property Address:
1132 FERRO AVENUE
BESSEMER, AL 35020

Page 4

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | **104,028.00** | | .00 | | | | .00 |
| 11/01/2001 | CHL ESC BALXFERS | 752.95 | 11/2001 | .00 / 104,028.00 | .00 | 752.95 / 752.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/01/2001 | MISC. POSTING | 37.06 | 11/2001 | .00 / 104,028.00 | 37.06 | .00 / 752.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/01/2001 | INITIAL INS DEP | 382.25 | 11/2001 | .00 / 104,028.00 | .00 | 382.25 / 1,135.20 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/01/2001 | INITIAL TAX DEP | -314.74 | 11/2001 | .00 / 104,028.00 | .00 | -314.74 / 820.46 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/13/2001 | COUNTY TAX PMT | -478.05 | 11/2001 | .00 / 104,028.00 | .00 | -478.05 / 342.41 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/06/2001 | FHA MIP PMT | -42.49 | 11/2001 | .00 / 104,028.00 | .00 | -42.49 / 299.92 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/14/2001 | REGULAR PAYMENT | 775.00 | 12/2001 | 94.04 / 103,933.96 | 563.49 | 117.47 / 417.39 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/07/2002 | FHA MIP PMT | -42.49 | 12/2001 | .00 / 103,933.96 | .00 | -42.49 / 374.90 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/16/2002 | REGULAR PAYMENT | 775.00 | 01/2002 | 94.55 / 103,839.41 | 562.98 | 117.47 / 492.37 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/06/2002 | FHA MIP PMT | -42.49 | 01/2002 | .00 / 103,839.41 | .00 | -42.49 / 449.88 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/06/2002 | HAZARD INS PMT | -422.00 | 01/2002 | .00 / 103,839.41 | .00 | -422.00 / 27.88 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/15/2002 | REGULAR PAYMENT | 775.00 | 02/2002 | 95.07 / 103,744.34 | 562.46 | 117.47 / 145.35 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/06/2002 | FHA MIP PMT | -42.49 | 02/2002 | .00 / 103,744.34 | .00 | -42.49 / 102.86 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/15/2002 | REGULAR PAYMENT | 775.00 | 03/2002 | 95.58 / 103,648.76 | 561.95 | 117.47 / 220.33 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/04/2002 | FHA MIP PMT | -42.49 | 03/2002 | .00 / 103,648.76 | .00 | -42.49 / 177.84 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/15/2002 | REGULAR PAYMENT | 775.00 | 04/2002 | 96.10 / 103,552.66 | 561.43 | 117.47 / 285.31 | .00 | .00 | .00 / .00 | .00 / .00 |



BANA 1554

**Bank of America**
Home Loans

Page 5

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/06/2002 | FHA MIP PMT | -42.49 | 04/2002 | .00<br>103,552.66 | .00 | -42.49<br>252.82 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/16/2002 | REGULAR PAYMENT | 775.00 | 05/2002 | 96.62<br>103,456.04 | 560.91 | 117.47<br>370.29 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/06/2002 | FHA MIP PMT | -42.49 | 05/2002 | .00<br>103,456.04 | .00 | -42.49<br>327.80 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/14/2002 | REGULAR PAYMENT | 775.00 | 06/2002 | 97.14<br>103,358.90 | 560.39 | 117.47<br>445.27 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/05/2002 | FHA MIP PMT | -42.49 | 06/2002 | .00<br>103,358.90 | .00 | -42.49<br>402.78 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/15/2002 | REGULAR PAYMENT | 775.00 | 07/2002 | 97.67<br>103,261.23 | 559.86 | 117.47<br>520.25 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/06/2002 | FHA MIP PMT | -42.49 | 07/2002 | .00<br>103,261.23 | .00 | -42.49<br>477.76 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/16/2002 | REGULAR PAYMENT | 775.00 | 08/2002 | 98.20<br>103,163.03 | 559.33 | 117.47<br>595.23 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/06/2002 | FHA MIP PMT | -42.49 | 08/2002 | .00<br>103,163.03 | .00 | -42.49<br>552.74 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/13/2002 | REGULAR PAYMENT | 775.00 | 09/2002 | 98.73<br>103,064.30 | 558.80 | 117.47<br>670.21 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/04/2002 | FHA MIP PMT | -42.49 | 09/2002 | .00<br>103,064.30 | .00 | -42.49<br>627.72 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/11/2002 | REGULAR PAYMENT | 775.00 | 10/2002 | 99.27<br>102,965.03 | 558.26 | 117.47<br>745.19 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/06/2002 | FHA MIP PMT | -42.49 | 10/2002 | .00<br>102,965.03 | .00 | -42.49<br>702.70 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/12/2002 | COUNTY TAX PMT | -478.05 | 10/2002 | .00<br>102,965.03 | .00 | -478.05<br>224.65 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/15/2002 | REGULAR PAYMENT | 775.00 | 11/2002 | 99.80<br>102,865.23 | 557.73 | 117.47<br>342.12 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/05/2002 | FHA MIP PMT | -42.00 | 11/2002 | .00<br>102,865.23 | .00 | -42.00<br>300.12 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/27/2002 | REGULAR PAYMENT | 657.53 | 12/2002 | 100.34<br>102,764.89 | 557.19 | .00<br>300.12 | .00 | .00 | .00<br>-31.00 | .00<br>.00 |
| 01/07/2003 | FHA MIP PMT | -42.00 | 12/2002 | .00<br>102,764.89 | .00 | -42.00<br>258.12 | .00 | .00 | .00<br>-31.00 | .00<br>.00 |

BANA 1555

**Bank of America**
Home Loans

Page 6

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/24/2003 | REGULAR PAYMENT | 806.41 | 01/2003 | 100.89 / 102,664.00 | 556.64 | 117.86 / 375.98 | .00 | .00 | 31.02 / -31.00 | .00 / .00 |
| 02/05/2003 | HAZARD INS PMT | -506.00 | 01/2003 | .00 / 102,664.00 | .00 | -506.00 / -130.02 | .00 | .00 | .00 / -31.00 | .00 / .00 |
| 02/06/2003 | FHA MIP PMT | -42.00 | 01/2003 | .00 / 102,664.00 | .00 | -42.00 / -172.02 | .00 | .00 | .00 / -31.00 | .00 / .00 |
| 03/03/2003 | REGULAR PAYMENT | 806.41 | 02/2003 | 101.43 / 102,562.57 | 556.10 | 117.86 / -54.16 | .00 | .00 | 31.02 / -31.00 | .00 / .00 |
| 03/06/2003 | FHA MIP PMT | -42.00 | 02/2003 | .00 / 102,562.57 | .00 | -42.00 / -96.16 | .00 | .00 | .00 / -31.00 | .00 / .00 |
| 03/13/2003 | REGULAR PAYMENT | 806.41 | 03/2003 | 101.98 / 102,460.59 | 555.55 | 148.88 / 52.72 | .00 | .00 | .00 / -31.00 | .00 / .00 |
| 04/03/2003 | MISC. POSTING | .00 | 03/2003 | .00 / 102,460.59 | .00 | -31.00 / 21.72 | .00 | .00 | 31.00 / .00 | .00 / .00 |
| 04/15/2003 | REGULAR PAYMENT | 775.39 | 04/2003 | 102.54 / 102,358.05 | 554.99 | 117.86 / 139.58 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/29/2003 | FHA MIP PMT | -42.00 | 04/2003 | .00 / 102,358.05 | .00 | -42.00 / 97.58 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/06/2003 | FHA MIP PMT | -42.00 | 04/2003 | .00 / 102,358.05 | .00 | -42.00 / 55.58 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/29/2003 | REGULAR PAYMENT | 775.39 | 05/2003 | 103.09 / 102,254.96 | 554.44 | 117.86 / 173.44 | .00 | .00 | .00 / -31.02 | .00 / .00 |
| 06/05/2003 | FHA MIP PMT | -42.00 | 05/2003 | .00 / 102,254.96 | .00 | -42.00 / 131.44 | .00 | .00 | .00 / -31.02 | .00 / .00 |
| 06/30/2003 | REGULAR PAYMENT | 775.39 | 06/2003 | 103.65 / 102,151.31 | 553.88 | 117.86 / 249.30 | .00 | .00 | .00 / -62.04 | .00 / .00 |
| 07/07/2003 | FHA MIP PMT | -42.00 | 06/2003 | .00 / 102,151.31 | .00 | -42.00 / 207.30 | .00 | .00 | .00 / -62.04 | .00 / .00 |
| 08/05/2003 | REGULAR PAYMENT | 775.39 | 07/2003 | 104.21 / 102,047.10 | 553.32 | 117.86 / 325.16 | .00 | .00 | .00 / -93.06 | .00 / .00 |
| 08/06/2003 | FHA MIP PMT | -42.00 | 07/2003 | .00 / 102,047.10 | .00 | -42.00 / 283.16 | .00 | .00 | .00 / -93.06 | .00 / .00 |
| 09/05/2003 | FHA MIP PMT | -42.00 | 07/2003 | .00 / 102,047.10 | .00 | -42.00 / 241.16 | .00 | .00 | .00 / -93.06 | .00 / .00 |
| 10/06/2003 | FHA MIP PMT | -42.00 | 07/2003 | .00 / 102,047.10 | .00 | -42.00 / 199.16 | .00 | .00 | .00 / -93.06 | .00 / .00 |

**BANA 1556**

Page 7

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/13/2003 | REGULAR PAYMENT | 775.39 | 08/2003 | 104.77<br>101,942.33 | 552.76 | 117.86<br>317.02 | .00 | .00 | .00<br>-124.08 | .00<br>.00 |
| 11/06/2003 | FHA MIP PMT | -42.00 | 08/2003 | .00<br>101,942.33 | .00 | -42.00<br>275.02 | .00 | .00 | .00<br>-124.08 | .00<br>.00 |
| 11/24/2003 | COUNTY TAX PMT | -555.72 | 08/2003 | .00<br>101,942.33 | .00 | -555.72<br>-280.70 | .00 | .00 | .00<br>-124.08 | .00<br>.00 |
| 12/04/2003 | FHA MIP PMT | -41.47 | 08/2003 | .00<br>101,942.33 | .00 | -41.47<br>-322.17 | .00 | .00 | .00<br>-124.08 | .00<br>.00 |
| 12/10/2003 | REGULAR PAYMENT | 775.39 | 09/2003 | 105.34<br>101,836.99 | 552.19 | 117.86<br>-204.31 | .00 | .00 | .00<br>-155.10 | .00<br>.00 |
| 12/10/2003 | REGULAR PAYMENT | 775.39 | 10/2003 | 105.91<br>101,731.08 | 551.62 | 117.86<br>-86.45 | .00 | .00 | .00<br>-186.12 | .00<br>.00 |
| 01/07/2004 | FHA MIP PMT | -41.47 | 10/2003 | .00<br>101,731.08 | .00 | -41.47<br>-127.92 | .00 | .00 | .00<br>-186.12 | .00<br>.00 |
| 01/20/2004 | REGULAR PAYMENT | 775.39 | 11/2003 | 106.49<br>101,624.59 | 551.04 | 117.86<br>-10.06 | .00 | .00 | .00<br>-217.14 | .00<br>.00 |
| 01/20/2004 | REGULAR PAYMENT | 775.39 | 12/2003 | 107.06<br>101,517.53 | 550.47 | 117.86<br>107.80 | .00 | .00 | .00<br>-248.16 | .00<br>.00 |
| 01/20/2004 | REGULAR PAYMENT | 817.15 | 01/2004 | 107.64<br>101,409.89 | 549.89 | 159.62<br>267.42 | .00 | .00 | .00<br>-280.85 | .00<br>.00 |
| 01/30/2004 | HAZARD INS PMT | -568.00 | 01/2004 | .00<br>101,409.89 | .00 | -568.00<br>-300.58 | .00 | .00 | .00<br>-280.85 | .00<br>.00 |
| 02/05/2004 | FHA MIP PMT | -41.47 | 01/2004 | .00<br>101,409.89 | .00 | -41.47<br>-342.05 | .00 | .00 | .00<br>-280.85 | .00<br>.00 |
| 02/17/2004 | REGULAR PAYMENT | 817.15 | 02/2004 | 108.23<br>101,301.66 | 549.30 | 159.62<br>-182.43 | .00 | .00 | .00<br>-280.85 | .00<br>.00 |
| 03/04/2004 | FHA MIP PMT | -41.47 | 02/2004 | .00<br>101,301.66 | .00 | -41.47<br>-223.90 | .00 | .00 | .00<br>-280.85 | .00<br>.00 |
| 04/06/2004 | FHA MIP PMT | -41.47 | 02/2004 | .00<br>101,301.66 | .00 | -41.47<br>-265.37 | .00 | .00 | .00<br>-280.85 | .00<br>.00 |
| 04/08/2004 | REGULAR PAYMENT | 817.15 | 03/2004 | 108.81<br>101,192.85 | 548.72 | 159.62<br>-105.75 | .00 | .00 | .00<br>-313.54 | .00<br>.00 |
| 04/08/2004 | REGULAR PAYMENT | 817.15 | 04/2004 | 109.40<br>101,083.45 | 548.13 | 159.62<br>53.87 | .00 | .00 | .00<br>-313.54 | .00<br>.00 |
| 05/06/2004 | FHA MIP PMT | -41.47 | 04/2004 | .00<br>101,083.45 | .00 | -41.47<br>12.40 | .00 | .00 | .00<br>-313.54 | .00<br>.00 |

**Bank of America**
Home Loans

**BANA 1557**

**Bank of America**
Home Loans

Page 8

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/17/2004 | REGULAR PAYMENT | 817.15 | 05/2004 | 109.99 / 100,973.46 | 547.54 | 159.62 / 172.02 | .00 | .00 | .00 / -313.54 | .00 / .00 |
| 06/04/2004 | FHA MIP PMT | -41.47 | 05/2004 | .00 / 100,973.46 | .00 | -41.47 / 130.55 | .00 | .00 | .00 / -313.54 | .00 / .00 |
| 07/07/2004 | FHA MIP PMT | -41.47 | 05/2004 | .00 / 100,973.46 | .00 | -41.47 / 89.08 | .00 | .00 | .00 / -313.54 | .00 / .00 |
| 08/05/2004 | FHA MIP PMT | -41.47 | 05/2004 | .00 / 100,973.46 | .00 | -41.47 / 47.61 | .00 | .00 | .00 / -313.54 | .00 / .00 |
| 09/07/2004 | FHA MIP PMT | -41.47 | 05/2004 | .00 / 100,973.46 | .00 | -41.47 / 6.14 | .00 | .00 | .00 / -313.54 | .00 / .00 |
| 10/06/2004 | FHA MIP PMT | -41.47 | 05/2004 | .00 / 100,973.46 | .00 | -41.47 / -35.33 | .00 | .00 | .00 / -313.54 | .00 / .00 |
| 11/04/2004 | FHA MIP PMT | -41.47 | 05/2004 | .00 / 100,973.46 | .00 | -41.47 / -76.80 | .00 | .00 | .00 / -313.54 | .00 / .00 |
| 11/05/2004 | MISC. POSTING | 98.07 | 05/2004 | .00 / 100,973.46 | .00 | .00 / -76.80 | .00 | .00 | 98.07 / -313.54 | .00 / .00 |
| 11/05/2004 | MISC. POSTING | 313.54 | 05/2004 | .00 / 100,973.46 | .00 | .00 / -76.80 | .00 | .00 | 313.54 / .00 | .00 / .00 |
| 11/09/2004 | MISC. POSTING | .00 | 05/2004 | -784.49 / 101,757.95 | .00 | 784.49 / 707.69 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/09/2004 | PRINCIPAL ADJUST. | -2,734.70 | 10/2004 | -2,734.70 / 104,492.65 | .00 | .00 / 707.69 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/09/2004 | DUE DATE ADJUST. | .00 | 10/2004 | .00 / 104,492.65 | .00 | .00 / 707.69 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/09/2004 | COUNTY TAX PMT | -582.26 | 10/2004 | .00 / 104,492.65 | .00 | -582.26 / 125.43 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/11/2004 | REGULAR PAYMENT | 680.44 | 11/2004 | 114.44 / 104,378.21 | 566.00 | .00 / 125.43 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/11/2004 | MISC. POSTING | 150.66 | 11/2004 | .00 / 104,378.21 | .00 | 150.66 / 276.09 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/06/2004 | FHA MIP PMT | -40.91 | 11/2004 | .00 / 104,378.21 | .00 | -40.91 / 235.18 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/15/2004 | REGULAR PAYMENT | 831.00 | 12/2004 | 115.06 / 104,263.15 | 565.38 | 150.56 / 385.74 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/06/2005 | FHA MIP PMT | -40.91 | 12/2004 | .00 / 104,263.15 | .00 | -40.91 / 344.83 | .00 | .00 | .00 / .00 | .00 / .00 |

**BANA 1558**

**Bank of America**
**Home Loans**

Page 9

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/18/2005 | REGULAR PAYMENT | 826.27 | 01/2005 | 115.68<br>104,147.47 | 564.76 | 145.83<br>490.66 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/28/2005 | HAZARD INS PMT | -604.00 | 01/2005 | .00<br>104,147.47 | .00 | -604.00<br>-113.34 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/04/2005 | FHA MIP PMT | -40.91 | 01/2005 | .00<br>104,147.47 | .00 | -40.91<br>-154.25 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/15/2005 | REGULAR PAYMENT | 826.27 | 02/2005 | 116.31<br>104,031.16 | 564.13 | 145.83<br>-8.42 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/04/2005 | FHA MIP PMT | -40.91 | 02/2005 | .00<br>104,031.16 | .00 | -40.91<br>-49.33 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/01/2005 | REGULAR PAYMENT | 826.27 | 03/2005 | 116.94<br>103,914.22 | 563.50 | 145.83<br>96.50 | .00 | .00 | .00<br>-33.05 | .00<br>.00 |
| 04/06/2005 | FHA MIP PMT | -40.91 | 03/2005 | .00<br>103,914.22 | .00 | -40.91<br>55.59 | .00 | .00 | .00<br>-33.05 | .00<br>.00 |
| 05/05/2005 | FHA MIP PMT | -40.91 | 03/2005 | .00<br>103,914.22 | .00 | -40.91<br>14.68 | .00 | .00 | .00<br>-33.05 | .00<br>.00 |
| 06/06/2005 | FHA MIP PMT | -40.91 | 03/2005 | .00<br>103,914.22 | .00 | -40.91<br>-26.23 | .00 | .00 | .00<br>-33.05 | .00<br>.00 |
| 06/24/2005 | REGULAR PAYMENT | 826.27 | 04/2005 | 117.57<br>103,796.65 | 562.87 | 145.83<br>119.60 | .00 | .00 | .00<br>-66.10 | .00<br>.00 |
| 06/24/2005 | REGULAR PAYMENT | 836.31 | 05/2005 | 118.21<br>103,678.44 | 562.23 | 155.87<br>275.47 | .00 | .00 | .00<br>-99.55 | .00<br>.00 |
| 06/24/2005 | REGULAR PAYMENT | 836.31 | 06/2005 | 118.85<br>103,559.59 | 561.59 | 155.87<br>431.34 | .00 | .00 | .00<br>-133.00 | .00<br>.00 |
| 07/07/2005 | FHA MIP PMT | -40.91 | 06/2005 | .00<br>103,559.59 | .00 | -40.91<br>390.43 | .00 | .00 | .00<br>-133.00 | .00<br>.00 |
| 08/04/2005 | FHA MIP PMT | -40.91 | 06/2005 | .00<br>103,559.59 | .00 | -40.91<br>349.52 | .00 | .00 | .00<br>-133.00 | .00<br>.00 |
| 09/02/2005 | REGULAR PAYMENT | 859.32 | 07/2005 | 119.49<br>103,440.10 | 560.95 | 155.87<br>505.39 | .00 | .00 | 23.01<br>-143.44 | .00<br>.00 |
| 09/07/2005 | FHA MIP PMT | -40.91 | 07/2005 | .00<br>103,440.10 | .00 | -40.91<br>464.48 | .00 | .00 | .00<br>-143.44 | .00<br>.00 |
| 09/27/2005 | REGULAR PAYMENT | 859.32 | 08/2005 | 120.14<br>103,319.96 | 560.30 | 155.87<br>620.35 | .00 | .00 | 23.01<br>-120.43 | .00<br>.00 |
| 10/06/2005 | FHA MIP PMT | -40.91 | 08/2005 | .00<br>103,319.96 | .00 | -40.91<br>579.44 | .00 | .00 | .00<br>-120.43 | .00<br>.00 |

**BANA 1559**

**Bank of America**
**Home Loans**

Page 10

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/04/2005 | FHA MIP PMT | -40.91 | 08/2005 | .00 / 103,319.96 | .00 | -40.91 / 538.53 | .00 | .00 | .00 / -120.43 | .00 / .00 |
| 11/11/2005 | COUNTY TAX PMT | -615.84 | 08/2005 | .00 / 103,319.96 | .00 | -615.84 / -77.31 | .00 | .00 | .00 / -120.43 | .00 / .00 |
| 11/23/2005 | REGULAR PAYMENT | 836.31 | 09/2005 | 120.79 / 103,199.17 | 559.65 | 155.87 / 78.56 | .00 | .00 | .00 / -153.88 | .00 / .00 |
| 11/23/2005 | REGULAR PAYMENT | 836.31 | 10/2005 | 121.44 / 103,077.73 | 559.00 | 155.87 / 234.43 | .00 | .00 | .00 / -187.33 | .00 / .00 |
| 11/23/2005 | REGULAR PAYMENT | 1,057.09 | 11/2005 | 122.10 / 102,955.63 | 558.34 | 155.87 / 390.30 | .00 | .00 | 220.78 / .00 | .00 / .00 |
| 11/23/2005 | MISC. POSTING | 646.27 | 11/2005 | 646.27 / 102,309.36 | .00 | .00 / 390.30 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/05/2005 | MISC. POSTING | -646.27 | 11/2005 | -646.27 / 102,955.63 | .00 | .00 / 390.30 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/05/2005 | MISC. POSTING | -220.78 | 11/2005 | .00 / 102,955.63 | .00 | .00 / 390.30 | .00 | .00 | -220.78 / -220.78 | .00 / .00 |
| 12/05/2005 | REGULAR PAYMENT | 867.05 | 12/2005 | 122.76 / 102,832.87 | 557.68 | 155.87 / 546.17 | .00 | .00 | 30.74 / -190.04 | .00 / .00 |
| 12/06/2005 | FHA MIP PMT | -40.31 | 12/2005 | .00 / 102,832.87 | .00 | -40.31 / 505.86 | .00 | .00 | .00 / -190.04 | .00 / .00 |
| 01/06/2006 | FHA MIP PMT | -40.31 | 12/2005 | .00 / 102,832.87 | .00 | -40.31 / 465.55 | .00 | .00 | .00 / -190.04 | .00 / .00 |
| 01/23/2006 | REGULAR PAYMENT | 836.31 | 01/2006 | 123.43 / 102,709.44 | 557.01 | 155.87 / 621.42 | .00 | .00 | .00 / -223.49 | .00 / .00 |
| 01/31/2006 | HAZARD INS PMT | -656.00 | 01/2006 | .00 / 102,709.44 | .00 | -656.00 / -34.58 | .00 | .00 | .00 / -223.49 | .00 / .00 |
| 02/06/2006 | FHA MIP PMT | -40.31 | 01/2006 | .00 / 102,709.44 | .00 | -40.31 / -74.89 | .00 | .00 | .00 / -223.49 | .00 / .00 |
| 03/06/2006 | FHA MIP PMT | -40.31 | 01/2006 | .00 / 102,709.44 | .00 | -40.31 / -115.20 | .00 | .00 | .00 / -223.49 | .00 / .00 |
| 03/28/2006 | REGULAR PAYMENT | 875.00 | 02/2006 | 124.10 / 102,585.34 | 556.34 | 155.87 / 40.67 | .00 | .00 | 38.69 / -218.25 | .00 / .00 |
| 04/06/2006 | FHA MIP PMT | -40.31 | 02/2006 | .00 / 102,585.34 | .00 | -40.31 / .36 | .00 | .00 | .00 / -218.25 | .00 / .00 |
| 05/04/2006 | FHA MIP PMT | -40.31 | 02/2006 | .00 / 102,585.34 | .00 | -40.31 / -39.95 | .00 | .00 | .00 / -218.25 | .00 / .00 |

**BANA 1560**

**Bank of America**
**Home Loans**

Page 11

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/06/2006 | FHA MIP PMT | -40.31 | 02/2006 | .00 / 102,585.34 | .00 | -40.31 / -80.26 | .00 | .00 | .00 / -218.25 | .00 / .00 |
| 06/30/2006 | REGULAR PAYMENT | 836.31 | 03/2006 | 124.77 / 102,460.57 | 555.67 | 155.87 / 75.61 | .00 | .00 | .00 / -251.70 | .00 / .00 |
| 06/30/2006 | REGULAR PAYMENT | 836.31 | 04/2006 | 125.45 / 102,335.12 | 554.99 | 155.87 / 231.48 | .00 | .00 | .00 / -285.15 | .00 / .00 |
| 06/30/2006 | REGULAR PAYMENT | 835.99 | 05/2006 | 126.12 / 102,209.00 | 554.32 | 155.55 / 387.03 | .00 | .00 | .00 / -318.59 | .00 / .00 |
| 06/30/2006 | REGULAR PAYMENT | 835.99 | 06/2006 | 126.81 / 102,082.19 | 553.63 | 155.55 / 542.58 | .00 | .00 | .00 / -352.03 | .00 / .00 |
| 06/30/2006 | REGULAR PAYMENT | 835.99 | 07/2006 | 127.49 / 101,954.70 | 552.95 | 155.55 / 698.13 | .00 | .00 | .00 / -352.03 | .00 / .00 |
| 07/07/2006 | FHA MIP PMT | -40.31 | 07/2006 | .00 / 101,954.70 | .00 | -40.31 / 657.82 | .00 | .00 | .00 / -352.03 | .00 / .00 |
| 08/04/2006 | FHA MIP PMT | -40.31 | 07/2006 | .00 / 101,954.70 | .00 | -40.31 / 617.51 | .00 | .00 | .00 / -352.03 | .00 / .00 |
| 08/17/2006 | REGULAR PAYMENT | 835.99 | 08/2006 | 128.19 / 101,826.51 | 552.25 | 155.55 / 773.06 | .00 | .00 | .00 / -385.47 | .00 / .00 |
| 09/07/2006 | FHA MIP PMT | -40.31 | 08/2006 | .00 / 101,826.51 | .00 | -40.31 / 732.75 | .00 | .00 | .00 / -385.47 | .00 / .00 |
| 10/02/2006 | REGULAR PAYMENT | 835.99 | 09/2006 | 128.88 / 101,697.63 | 551.56 | 155.55 / 888.30 | .00 | .00 | .00 / -418.91 | .00 / .00 |
| 10/05/2006 | FHA MIP PMT | -40.31 | 09/2006 | .00 / 101,697.63 | .00 | -40.31 / 847.99 | .00 | .00 | .00 / -418.91 | .00 / .00 |
| 10/31/2006 | COUNTY TAX PMT | -641.38 | 09/2006 | .00 / 101,697.63 | .00 | -641.38 / 206.61 | .00 | .00 | .00 / -418.91 | .00 / .00 |
| 11/06/2006 | FHA MIP PMT | -40.31 | 10/2006 | .00 / 101,697.63 | .00 | -40.31 / 166.30 | .00 | .00 | .00 / -418.91 | .00 / .00 |
| 11/10/2006 | REGULAR PAYMENT | 835.99 | 10/2006 | 129.58 / 101,568.05 | 550.86 | 155.55 / 321.85 | .00 | .00 | .00 / -452.35 | .00 / .00 |
| 12/06/2006 | FHA MIP PMT | -39.68 | 10/2006 | .00 / 101,568.05 | .00 | -39.68 / 282.17 | .00 | .00 | .00 / -452.35 | .00 / .00 |
| 01/02/2007 | REGULAR PAYMENT | 835.99 | 11/2006 | 130.28 / 101,437.77 | 550.16 | 155.55 / 437.72 | .00 | .00 | .00 / -485.79 | .00 / .00 |
| 01/02/2007 | REGULAR PAYMENT | 835.99 | 12/2006 | 130.99 / 101,306.78 | 549.45 | 155.55 / 593.27 | .00 | .00 | .00 / -519.23 | .00 / .00 |

BANA 1561

Bank of America
Home Loans

Page 12

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/02/2007 | REGULAR PAYMENT | 835.99 | 01/2007 | 131.69 / 101,175.09 | 548.75 | 155.55 / 748.82 | .00 | .00 | .00 / -519.23 | .00 / .00 |
| 01/05/2007 | FHA MIP PMT | -39.68 | 01/2007 | .00 / 101,175.09 | | -39.68 / 709.14 | .00 | .00 | .00 / -519.23 | .00 / .00 |
| 01/30/2007 | HAZARD INS PMT | -721.00 | 01/2007 | .00 / 101,175.09 | | -721.00 / -11.86 | .00 | .00 | .00 / -519.23 | .00 / .00 |
| 02/06/2007 | FHA MIP PMT | -39.68 | 01/2007 | .00 / 101,175.09 | | -39.68 / -51.54 | .00 | .00 | .00 / -519.23 | .00 / .00 |
| 02/14/2007 | REGULAR PAYMENT | 835.99 | 02/2007 | 132.41 / 101,042.68 | 548.03 | 155.55 / 104.01 | .00 | .00 | .00 / -519.23 | .00 / .00 |
| 03/06/2007 | FHA MIP PMT | -39.68 | 02/2007 | .00 / 101,042.68 | | -39.68 / 64.33 | .00 | .00 | .00 / -519.23 | .00 / .00 |
| 04/02/2007 | REGULAR PAYMENT | 836.00 | 03/2007 | 133.13 / 100,909.55 | 547.31 | 155.55 / 219.88 | .00 | .00 | .01 / -552.66 | .00 / .00 |
| 04/05/2007 | FHA MIP PMT | -39.68 | 03/2007 | .00 / 100,909.55 | | -39.68 / 180.20 | .00 | .00 | .00 / -552.66 | .00 / .00 |
| 04/30/2007 | REGULAR PAYMENT | 835.99 | 04/2007 | 133.85 / 100,775.70 | 546.59 | 155.55 / 335.75 | .00 | .00 | .00 / -586.10 | .00 / .00 |
| 05/04/2007 | FHA MIP PMT | -39.68 | 04/2007 | .00 / 100,775.70 | | -39.68 / 296.07 | .00 | .00 | .00 / -586.10 | .00 / .00 |
| 05/25/2007 | REGULAR PAYMENT | 845.00 | 05/2007 | 134.57 / 100,641.13 | 545.87 | 163.00 / 459.07 | .00 | .00 | 1.56 / -618.28 | .00 / .00 |
| 06/06/2007 | FHA MIP PMT | -39.68 | 05/2007 | .00 / 100,641.13 | | -39.68 / 419.39 | .00 | .00 | .00 / -618.28 | .00 / .00 |
| 06/15/2007 | REGULAR PAYMENT | 850.00 | 06/2007 | 135.30 / 100,505.83 | 545.14 | 163.00 / 582.39 | .00 | .00 | 6.56 / -611.72 | .00 / .00 |
| 07/06/2007 | FHA MIP PMT | -39.68 | 06/2007 | .00 / 100,505.83 | | -39.68 / 542.71 | .00 | .00 | .00 / -611.72 | .00 / .00 |
| 07/31/2007 | REGULAR PAYMENT | 850.00 | 07/2007 | 136.03 / 100,369.80 | 544.41 | 163.00 / 705.71 | .00 | .00 | 6.56 / -638.90 | .00 / .00 |
| 08/06/2007 | FHA MIP PMT | -39.68 | 07/2007 | .00 / 100,369.80 | | -39.68 / 666.03 | .00 | .00 | .00 / -638.90 | .00 / .00 |
| 09/06/2007 | REGULAR PAYMENT | 860.00 | 08/2007 | 136.77 / 100,233.03 | 543.67 | 163.00 / 829.03 | .00 | .00 | 16.56 / -656.08 | .00 / .00 |
| 09/07/2007 | FHA MIP PMT | -39.68 | 08/2007 | .00 / 100,233.03 | | -39.68 / 789.35 | .00 | .00 | .00 / -656.08 | .00 / .00 |

**BANA 1562**

**Bank of America**
**Home Loans**

Page 13

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/04/2007 | FHA MIP PMT | -39.68 | 08/2007 | .00 / 100,233.03 | .00 | -39.68 / 749.67 | .00 | .00 | .00 / -656.08 | .00 / .00 |
| 10/22/2007 | REGULAR PAYMENT | 843.44 | 09/2007 | 137.51 / 100,095.52 | 542.93 | 163.00 / 912.67 | .00 | .00 | .00 / -689.82 | .00 / .00 |
| 11/06/2007 | FHA MIP PMT | -39.68 | 09/2007 | .00 / 100,095.52 | .00 | -39.68 / 872.99 | .00 | .00 | .00 / -689.82 | .00 / .00 |
| 11/07/2007 | COUNTY TAX PMT | -742.09 | 09/2007 | .00 / 100,095.52 | .00 | -742.09 / 130.90 | .00 | .00 | .00 / -689.82 | .00 / .00 |
| 11/16/2007 | REGULAR PAYMENT | 843.44 | 10/2007 | 138.26 / 99,957.26 | 542.18 | 163.00 / 293.90 | .00 | .00 | .00 / -723.56 | .00 / .00 |
| 11/27/2007 | REGULAR PAYMENT | 877.18 | 11/2007 | 139.00 / 99,818.26 | 541.44 | 163.00 / 456.90 | .00 | .00 | 33.74 / -723.56 | .00 / .00 |
| 12/06/2007 | FHA MIP PMT | -39.00 | 11/2007 | .00 / 99,818.26 | .00 | -39.00 / 417.90 | .00 | .00 | .00 / -723.56 | .00 / .00 |
| 12/28/2007 | REGULAR PAYMENT | 877.18 | 12/2007 | 139.76 / 99,678.50 | 540.68 | 163.00 / 580.90 | .00 | .00 | 33.74 / -723.56 | .00 / .00 |
| 01/07/2008 | FHA MIP PMT | -39.00 | 12/2007 | .00 / 99,678.50 | .00 | -39.00 / 541.90 | .00 | .00 | .00 / -723.56 | .00 / .00 |
| 01/30/2008 | HAZARD INS PMT | -737.43 | 12/2007 | .00 / 99,678.50 | .00 | -737.43 / -195.53 | .00 | .00 | .00 / -723.56 | .00 / .00 |
| 02/06/2008 | FHA MIP PMT | -39.00 | 12/2007 | .00 / 99,678.50 | .00 | -39.00 / -234.53 | .00 | .00 | .00 / -723.56 | .00 / .00 |
| 02/13/2008 | REGULAR PAYMENT | 843.44 | 01/2008 | 140.51 / 99,537.99 | 539.93 | 163.00 / -71.53 | .00 | .00 | .00 / -757.30 | .00 / .00 |
| 03/03/2008 | REGULAR PAYMENT | 843.44 | 02/2008 | 141.28 / 99,396.71 | 539.16 | 163.00 / 91.47 | .00 | .00 | .00 / -791.04 | .00 / .00 |
| 03/06/2008 | FHA MIP PMT | -39.00 | 02/2008 | .00 / 99,396.71 | .00 | -39.00 / 52.47 | .00 | .00 | .00 / -791.04 | .00 / .00 |
| 04/04/2008 | FHA MIP PMT | -39.00 | 02/2008 | .00 / 99,396.71 | .00 | -39.00 / 13.47 | .00 | .00 | .00 / -791.04 | .00 / .00 |
| 04/25/2008 | REGULAR PAYMENT | 843.44 | 03/2008 | 142.04 / 99,254.67 | 538.40 | 163.00 / 176.47 | .00 | .00 | .00 / -824.78 | .00 / .00 |
| 04/25/2008 | REGULAR PAYMENT | 843.44 | 04/2008 | 142.81 / 99,111.86 | 537.63 | 163.00 / 339.47 | .00 | .00 | .00 / -858.52 | .00 / .00 |
| 05/06/2008 | FHA MIP PMT | -39.00 | 04/2008 | .00 / 99,111.86 | .00 | -39.00 / 300.47 | .00 | .00 | .00 / -858.52 | .00 / .00 |

BANA 1563

**Bank of America**
Home Loans

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/05/2008 | FHA MIP PMT | -39.00 | 04/2008 | .00 99,111.86 | .00 | -39.00 261.47 | .00 | .00 | .00 -858.52 | .00 .00 |
| 07/07/2008 | FHA MIP PMT | -39.00 | 04/2008 | .00 99,111.86 | .00 | -39.00 222.47 | .00 | .00 | .00 -858.52 | .00 .00 |
| 07/10/2008 | ADDL INS PMT | -96.00 | 04/2008 | .00 99,111.86 | .00 | -96.00 126.47 | .00 | .00 | .00 -858.52 | .00 .00 |
| 07/15/2008 | REGULAR PAYMENT | 855.46 | 05/2008 | 143.58 98,968.28 | 536.86 | 175.02 301.49 | .00 | .00 | .00 -892.74 | .00 .00 |
| 08/06/2008 | FHA MIP PMT | -39.00 | 05/2008 | .00 98,968.28 | .00 | -39.00 262.49 | .00 | .00 | .00 -892.74 | .00 .00 |
| 08/11/2008 | REGULAR PAYMENT | 855.46 | 06/2008 | 144.36 98,823.92 | 536.08 | 175.02 437.51 | .00 | .00 | .00 -926.96 | .00 .00 |
| 08/11/2008 | REGULAR PAYMENT | 855.46 | 07/2008 | 145.14 98,678.78 | 535.30 | 175.02 612.53 | .00 | .00 | .00 -961.18 | .00 .00 |
| 09/05/2008 | FHA MIP PMT | -39.00 | 07/2008 | .00 98,678.78 | .00 | -39.00 573.53 | .00 | .00 | .00 -961.18 | .00 .00 |
| 10/06/2008 | FHA MIP PMT | -39.00 | 07/2008 | .00 98,678.78 | .00 | -39.00 534.53 | .00 | .00 | .00 -961.18 | .00 .00 |
| 11/03/2008 | REGULAR PAYMENT | 856.00 | 08/2008 | 145.93 98,532.85 | 534.51 | 175.02 709.55 | .00 | .00 | .54 -994.86 | .00 .00 |
| 11/06/2008 | FHA MIP PMT | -39.00 | 08/2008 | .00 98,532.85 | .00 | -39.00 670.55 | .00 | .00 | .00 -994.86 | .00 .00 |
| 11/11/2008 | COUNTY TAX PMT | -909.99 | 08/2008 | .00 98,532.85 | .00 | -909.99 -239.44 | .00 | .00 | .00 -994.86 | .00 .00 |
| 12/04/2008 | FHA MIP PMT | -38.27 | 08/2008 | .00 98,532.85 | .00 | -38.27 -277.71 | .00 | .00 | .00 -994.86 | .00 .00 |
| 01/07/2009 | FHA MIP PMT | -38.27 | 08/2008 | .00 98,532.85 | .00 | -38.27 -315.98 | .00 | .00 | .00 -994.86 | .00 .00 |
| 01/07/2009 | MISC. POSTING | 856.00 | 08/2008 | .00 98,532.85 | .00 | .00 -315.98 | .00 | .00 | .00 -994.86 | 856.00 856.00 |
| 02/03/2009 | HAZARD INS PMT | -911.47 | 08/2008 | .00 98,532.85 | .00 | -911.47 -1,227.45 | .00 | .00 | .00 -994.86 | .00 856.00 |
| 02/05/2009 | FHA MIP PMT | -38.27 | 08/2008 | .00 98,532.85 | .00 | -38.27 -1,265.72 | .00 | .00 | .00 -994.86 | .00 856.00 |
| 03/05/2009 | FHA MIP PMT | -38.27 | 08/2008 | .00 98,532.85 | .00 | -38.27 -1,303.99 | .00 | .00 | .00 -994.86 | .00 856.00 |

BANA 1564

**Bank of America**
Home Loans

Page 15

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/17/2009 | MISC. POSTING | 294.02 | 08/2008 | .00 / 98,532.85 | .00 | .00 / -1,303.99 | .00 | .00 | .00 / -994.86 | 294.02 / 1,150.02 |
| 04/06/2009 | FHA MIP PMT | -38.27 | 08/2008 | .00 / 98,532.85 | .00 | -38.27 / -1,342.26 | .00 | .00 | .00 / -994.86 | .00 / 1,150.02 |
| 04/28/2009 | MISC. POSTING | -1,150.00 | 08/2008 | .00 / 98,532.85 | .00 | .00 / -1,342.26 | .00 | .00 | .00 / -994.86 | -1,150.02 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 09/2008 | 146.72 / 98,386.13 | 533.72 | 175.02 / -1,167.24 | .00 | .00 | .00 / -1,029.08 | .00 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 10/2008 | 147.52 / 98,238.61 | 532.92 | 175.02 / -992.22 | .00 | .00 | .00 / -1,063.30 | .00 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 11/2008 | 148.31 / 98,090.30 | 532.13 | 175.02 / -817.20 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 12/2008 | 149.12 / 97,941.18 | 531.32 | 175.02 / -642.18 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 01/2009 | 149.93 / 97,791.25 | 530.51 | 175.02 / -467.16 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 02/2009 | 150.74 / 97,640.51 | 529.70 | 175.02 / -292.14 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | ESCROW SHORTAGE | 56.95 | 02/2009 | .00 / 97,640.51 | .00 | 56.95 / -235.19 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 03/2009 | 151.55 / 97,488.96 | 528.89 | 175.02 / -60.17 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | ESCROW SHORTAGE | 56.95 | 03/2009 | .00 / 97,488.96 | .00 | 56.95 / -3.22 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | REGULAR PAYMENT | 855.46 | 04/2009 | 152.37 / 97,336.59 | 528.07 | 175.02 / 171.80 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | ESCROW SHORTAGE | 56.95 | 04/2009 | .00 / 97,336.59 | .00 | 56.95 / 228.75 | .00 | .00 | .00 / -1,097.52 | .00 / .00 |
| 04/28/2009 | MISC. POSTING | 1,098.11 | 04/2009 | .00 / 97,336.59 | .00 | .59 / 229.34 | .00 | .00 | 1,097.52 / .00 | .00 / .00 |
| 05/04/2009 | REGULAR PAYMENT | 887.68 | 05/2009 | 153.20 / 97,183.39 | 527.24 | 207.24 / 436.58 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/06/2009 | FHA MIP PMT | -38.27 | 05/2009 | .00 / 97,183.39 | .00 | -38.27 / 398.31 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/04/2009 | FHA MIP PMT | -38.27 | 05/2009 | .00 / 97,183.39 | .00 | -38.27 / 360.04 | .00 | .00 | .00 / .00 | .00 / .00 |

BANA 1565

**Bank of America**
Home Loans

Page 16

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/16/2009 | REGULAR PAYMENT | 887.68 | 06/2009 | 154.03 / 97,029.36 | 526.41 | 207.24 / 567.28 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/06/2009 | FHA MIP PMT | -38.27 | 06/2009 | .00 / 97,029.36 | .00 | -38.27 / 529.01 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/16/2009 | REGULAR PAYMENT | 887.68 | 07/2009 | 154.86 / 96,874.50 | 525.58 | 207.24 / 736.25 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/06/2009 | FHA MIP PMT | -38.27 | 07/2009 | .00 / 96,874.50 | .00 | -38.27 / 697.98 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/01/2009 | REGULAR PAYMENT | 923.19 | 08/2009 | 155.70 / 96,718.80 | 524.74 | 207.24 / 905.22 | .00 | .00 | 35.51 / .00 | .00 / .00 |
| 09/04/2009 | FHA MIP PMT | -38.27 | 08/2009 | .00 / 96,718.80 | .00 | -38.27 / 866.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/01/2009 | REGULAR PAYMENT | 923.19 | 09/2009 | 156.55 / 96,562.25 | 523.89 | 207.24 / 1,074.19 | .00 | .00 | 35.51 / .00 | .00 / .00 |
| 10/06/2009 | FHA MIP PMT | -38.27 | 09/2009 | .00 / 96,562.25 | .00 | -38.27 / 1,035.92 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/05/2009 | FHA MIP PMT | -38.27 | 09/2009 | .00 / 96,562.25 | .00 | -38.27 / 997.65 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/17/2009 | COUNTY TAX PMT | -890.76 | 09/2009 | .00 / 96,562.25 | .00 | -890.76 / 106.89 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/04/2009 | FHA MIP PMT | -37.50 | 09/2009 | .00 / 96,562.25 | .00 | -37.50 / 69.39 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/07/2010 | FHA MIP PMT | -37.50 | 09/2009 | .00 / 96,562.25 | .00 | -37.50 / 31.89 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/07/2010 | REGULAR PAYMENT | 887.68 | 10/2009 | 157.39 / 96,404.86 | 523.05 | 207.24 / 239.13 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/07/2010 | REGULAR PAYMENT | 887.68 | 11/2009 | 158.25 / 96,246.61 | 522.19 | 207.24 / 446.37 | .00 | .00 | .00 / -35.51 | .00 / .00 |
| 01/07/2010 | REGULAR PAYMENT | 974.64 | 12/2009 | 159.10 / 96,087.51 | 521.34 | 207.24 / 653.61 | .00 | .00 | .00 / -71.02 | .00 / .00 |
| 01/19/2010 | REGULAR PAYMENT | 887.68 | 01/2010 | 159.97 / 95,927.54 | 520.47 | 207.24 / 860.85 | .00 | .00 | 86.96 / -19.57 | .00 / .00 |
| 02/03/2010 | HAZARD INS PMT | -1,373.47 | 01/2010 | .00 / 95,927.54 | .00 | -1,373.47 / -512.62 | .00 | .00 | .00 / -55.08 | .00 / .00 |
| 02/04/2010 | FHA MIP PMT | -37.50 | 01/2010 | .00 / 95,927.54 | .00 | -37.50 / -550.12 | .00 | .00 | .00 / -55.08 | .00 / .00 |

BANA 1566

**Bank of America**
Home Loans

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/01/2010 | REGULAR PAYMENT | 887.68 | 02/2010 | 160.83 / 95,766.71 | 519.61 | 207.24 / -342.88 | .00 | .00 | .00 / -90.59 | .00 / .00 |
| 03/04/2010 | FHA MIP PMT | -37.50 | 02/2010 | .00 / 95,766.71 | .00 | -37.50 / -380.38 | .00 | .00 | .00 / -90.59 | .00 / .00 |
| 03/15/2010 | REGULAR PAYMENT | 887.68 | 03/2010 | 161.70 / 95,605.01 | 518.74 | 207.24 / -173.14 | .00 | .00 | .00 / -90.59 | .00 / .00 |
| 04/06/2010 | FHA MIP PMT | -37.50 | 03/2010 | .00 / 95,605.01 | .00 | -37.50 / -210.64 | .00 | .00 | .00 / -90.59 | .00 / .00 |
| 04/19/2010 | REGULAR PAYMENT | 923.19 | 04/2010 | 162.58 / 95,442.43 | 517.86 | 207.24 / -3.40 | .00 | .00 | 35.51 / -90.59 | .00 / .00 |
| 05/06/2010 | FHA MIP PMT | -37.50 | 04/2010 | .00 / 95,442.43 | .00 | -37.50 / -40.90 | .00 | .00 | .00 / -90.59 | .00 / .00 |
| 06/04/2010 | FHA MIP PMT | -37.50 | 04/2010 | .00 / 95,442.43 | .00 | -37.50 / -78.40 | .00 | .00 | .00 / -90.59 | .00 / .00 |
| 07/06/2010 | REGULAR PAYMENT | 887.68 | 05/2010 | 163.46 / 95,278.97 | 516.98 | 207.24 / 128.84 | .00 | .00 | .00 / -126.10 | .00 / .00 |
| 07/06/2010 | MISC. POSTING | 887.68 | 05/2010 | .00 / 95,278.97 | .00 | .00 / 128.84 | .00 | .00 | .00 / -126.10 | 887.68 / 887.68 |
| 07/07/2010 | FHA MIP PMT | -37.50 | 05/2010 | .00 / 95,278.97 | .00 | -37.50 / 91.34 | .00 | .00 | .00 / -126.10 | .00 / 887.68 |
| 07/07/2010 | MISC. POSTING | -887.68 | 05/2010 | .00 / 95,278.97 | .00 | .00 / 91.34 | .00 | .00 | .00 / -126.10 | -887.68 / .00 |
| 07/07/2010 | REGULAR PAYMENT | 887.68 | 06/2010 | 164.35 / 95,114.62 | 516.09 | 207.24 / 298.58 | .00 | .00 | .00 / -164.68 | .00 / .00 |
| 08/05/2010 | FHA MIP PMT | -37.50 | 06/2010 | .00 / 95,114.62 | .00 | -37.50 / 261.08 | .00 | .00 | .00 / -164.68 | .00 / .00 |
| 09/07/2010 | FHA MIP PMT | -37.50 | 06/2010 | .00 / 95,114.62 | .00 | -37.50 / 223.58 | .00 | .00 | .00 / -164.68 | .00 / .00 |
| 10/04/2010 | REGULAR PAYMENT | 964.42 | 07/2010 | 165.24 / 94,949.38 | 515.20 | 283.98 / 507.56 | .00 | .00 | .00 / -203.26 | .00 / .00 |
| 10/06/2010 | FHA MIP PMT | -37.50 | 07/2010 | .00 / 94,949.38 | .00 | -37.50 / 470.06 | .00 | .00 | .00 / -203.26 | .00 / .00 |
| 11/04/2010 | FHA MIP PMT | -37.50 | 07/2010 | .00 / 94,949.38 | .00 | -37.50 / 432.56 | .00 | .00 | .00 / -203.26 | .00 / .00 |
| 11/19/2010 | COUNTY TAX PMT | -890.76 | 07/2010 | .00 / 94,949.38 | .00 | -890.76 / -458.20 | .00 | .00 | .00 / -203.26 | .00 / .00 |

**BANA 1567**

**Bank of America**
**Home Loans**

Page 18

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/06/2010 | FHA MIP PMT | -36.67 | 07/2010 | .00 94,949.38 | .00 | -36.67 -494.87 | .00 | .00 | .00 -203.26 | .00 .00 |
| 01/06/2011 | FHA MIP PMT | -36.67 | 07/2010 | .00 94,949.38 | .00 | -36.67 -531.54 | .00 | .00 | .00 -203.26 | .00 .00 |
| 01/31/2011 | HAZARD INS PMT | -1,616.47 | 07/2010 | .00 94,949.38 | .00 | -1,616.47 -2,148.01 | .00 | .00 | .00 -203.26 | .00 .00 |
| 02/04/2011 | FHA MIP PMT | -36.67 | 07/2010 | .00 94,949.38 | .00 | -36.67 -2,184.68 | .00 | .00 | .00 -203.26 | .00 .00 |
| 03/04/2011 | FHA MIP PMT | -36.67 | 07/2010 | .00 94,949.38 | .00 | -36.67 -2,221.35 | .00 | .00 | .00 -203.26 | .00 .00 |
| 03/09/2011 | REGULAR PAYMENT | 1,003.00 | 08/2010 | 166.13 94,783.25 | 514.31 | 283.98 -1,937.37 | .00 | .00 | 38.58 -203.26 | .00 .00 |
| 04/06/2011 | FHA MIP PMT | -36.67 | 08/2010 | .00 94,783.25 | .00 | -36.67 -1,974.04 | .00 | .00 | .00 -203.26 | .00 .00 |
| 05/02/2011 | REGULAR PAYMENT | 970.00 | 09/2010 | 167.03 94,616.22 | 513.41 | 283.98 -1,690.06 | .00 | .00 | 5.58 -236.26 | .00 .00 |
| 05/05/2011 | FHA MIP PMT | -36.67 | 09/2010 | .00 94,616.22 | .00 | -36.67 -1,726.73 | .00 | .00 | .00 -236.26 | .00 .00 |
| 06/06/2011 | FHA MIP PMT | -36.67 | 09/2010 | .00 94,616.22 | .00 | -36.67 -1,763.40 | .00 | .00 | .00 -236.26 | .00 .00 |
| 06/29/2011 | REGULAR PAYMENT | 964.42 | 10/2010 | 167.94 94,448.28 | 512.50 | 283.98 -1,479.42 | .00 | .00 | .00 -236.26 | .00 .00 |
| 07/25/2011 | REGULAR PAYMENT | 964.42 | 11/2010 | 168.85 94,279.43 | 511.59 | 283.98 -1,195.44 | .00 | .00 | .00 -236.26 | .00 .00 |
| 09/06/2011 | MISC. POSTING | 740.00 | 11/2010 | .00 94,279.43 | .00 | .00 -1,195.44 | .00 | .00 | .00 -236.26 | 740.00 740.00 |
| 09/06/2011 | MISC. POSTING | .00 | 11/2010 | -3,283.16 97,562.59 | .00 | 3,283.16 2,087.72 | .00 | .00 | .00 -236.26 | .00 740.00 |
| 09/21/2011 | PRINCIPAL ADJUST. | -5,566.08 | 10/2011 | -5,566.08 103,128.67 | .00 | .00 2,087.72 | .00 | .00 | .00 -236.26 | .00 740.00 |
| 09/21/2011 | DUE DATE ADJUST. | .00 | 10/2011 | .00 103,128.67 | .00 | .00 2,087.72 | .00 | .00 | .00 -236.26 | .00 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 103,128.67 | .00 | .00 2,087.72 | .00 | .00 | 21.21 -215.05 | .00 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 103,128.67 | .00 | .00 2,087.72 | .00 | .00 | 21.21 -193.84 | .00 740.00 |

BANA 1568

**Bank of America**
**Home Loans**

Page 19

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -172.63 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -151.42 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -130.21 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -109.00 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -87.79 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -66.58 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -45.37 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 21.21 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 21.21 / -24.16 | .00 / 740.00 |
| 09/21/2011 | Waive/Adj LateChg | 2.95 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | 2.95 / .00 | .00 / 740.00 |
| 09/21/2011 | MISC. POSTING | -739.17 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | .00 / .00 | -739.17 / .83 |
| 09/21/2011 | MISC. POSTING | 739.17 | 10/2011 | .00 / 103,128.67 | .00 | .00 / 2,087.72 | .00 | .00 | .00 / .00 | 739.17 / 740.00 |
| 09/22/2011 | MISC. POSTING | 740.00 | 10/2011 | 740.00 / 102,388.67 | .00 | .00 / 2,087.72 | .00 | .00 | .00 / .00 | .00 / 740.00 |
| 09/22/2011 | MISC. POSTING | -740.00 | 10/2011 | .00 / 102,388.67 | .00 | .00 / 2,087.72 | .00 | .00 | .00 / .00 | -740.00 / .00 |
| 11/09/2011 | REGULAR PAYMENT | 739.17 | 11/2011 | 135.61 / 102,253.06 | 394.62 | 208.94 / 2,296.66 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/05/2011 | COUNTY TAX PMT | -846.90 | 11/2011 | .00 / 102,253.06 | .00 | -846.90 / 1,449.76 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/12/2011 | REGULAR PAYMENT | 739.17 | 12/2011 | 136.13 / 102,116.93 | 394.10 | 208.94 / 1,658.70 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/24/2012 | MISC. POSTING | -.05 | 12/2011 | .00 / 102,116.93 | .00 | -.05 / 1,658.65 | .00 | .00 | .00 / .00 | .00 / .00 |

BANA 1569

**Bank of America**
Home Loans

Page 20

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/24/2012 | ESCROW SHORTAGE | .05 | | .00 / 102,116.93 | .00 | .05 / 1,658.70 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/30/2012 | HAZARD INS PMT | -2,061.48 | 12/2011 | .00 / 102,116.93 | .00 | -2,061.48 / -402.78 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/17/2012 | REGULAR PAYMENT | 739.17 | 01/2012 | 136.65 / 101,980.28 | 393.58 | 208.94 / -193.84 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/17/2012 | REGULAR PAYMENT | 739.17 | 02/2012 | 137.18 / 101,843.10 | 393.05 | 208.94 / 15.10 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/19/2012 | REGULAR PAYMENT | 739.17 | 03/2012 | 137.71 / 101,705.39 | 392.52 | 208.94 / 224.04 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/11/2012 | REGULAR PAYMENT | 739.17 | 04/2012 | 138.24 / 101,567.15 | 391.99 | 208.94 / 432.98 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/11/2012 | REGULAR PAYMENT | 739.17 | 05/2012 | 138.77 / 101,428.38 | 391.46 | 208.94 / 641.92 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/06/2012 | REGULAR PAYMENT | 783.32 | 06/2012 | 139.31 / 101,289.07 | 390.92 | 253.09 / 895.01 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/30/2012 | REGULAR PAYMENT | 783.32 | 07/2012 | 139.85 / 101,149.22 | 390.38 | 253.09 / 1,148.10 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/07/2012 | MISC. POSTING | 400.00 | 07/2012 | .00 / 101,149.22 | .00 | .00 / 1,148.10 | .00 | .00 | .00 / .00 | 400.00 / 400.00 |
| 09/11/2012 | MISC. POSTING | -400.00 | 07/2012 | .00 / 101,149.22 | .00 | .00 / 1,148.10 | .00 | .00 | .00 / .00 | -400.00 / .00 |
| 11/02/2012 | COUNTY TAX PMT | -834.27 | 07/2012 | .00 / 101,149.22 | .00 | -834.27 / 313.83 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/29/2013 | HAZARD INS PMT | -2,105.51 | 07/2012 | .00 / 101,149.22 | .00 | -2,105.51 / -1,791.68 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/31/2013 | REGULAR PAYMENT | 783.32 | 08/2012 | 140.38 / 101,008.84 | 389.85 | 253.09 / -1,538.59 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/12/2013 | PAYMENT REVERSAL | -783.32 | 07/2012 | -140.38 / 101,149.22 | -389.85 | -253.09 / -1,791.68 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/01/2013 | COUNTY TAX PMT | -800.61 | 07/2012 | .00 / 101,149.22 | .00 | -800.61 / -2,592.29 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/28/2014 | HAZARD INS PMT | -2,600.57 | 07/2012 | .00 / 101,149.22 | .00 | -2,600.57 / -5,192.86 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/29/2014 | COUNTY TAX PMT | -800.61 | 07/2012 | .00 / 101,149.22 | .00 | -800.61 / -5,993.47 | .00 | .00 | .00 / .00 | .00 / .00 |

BANA 1570

**Bank of America**
**Home Loans**

Page 21

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/26/2014 | MISC. POSTING | 935.72 | 07/2012 | .00 / 101,149.22 | .00 | .00 / -5,993.47 | .00 | .00 | .00 / .00 | 935.72 / 935.72 |
| 01/02/2015 | MISC. POSTING | 935.72 | 07/2012 | .00 / 101,149.22 | .00 | .00 / -5,993.47 | .00 | .00 | .00 / .00 | 935.72 / 1,871.44 |
| 01/27/2015 | HAZARD INS PMT | -2,685.62 | 07/2012 | .00 / 101,149.22 | .00 | -2,685.62 / -8,679.09 | .00 | .00 | .00 / .00 | .00 / 1,871.44 |
| 02/24/2015 | MISC. POSTING | 935.72 | 07/2012 | .00 / 101,149.22 | .00 | .00 / -8,679.09 | .00 | .00 | .00 / .00 | 935.72 / 2,807.16 |
| 04/10/2015 | MISC. POSTING | -2,349.96 | 07/2012 | .00 / 101,149.22 | .00 | .00 / -8,679.09 | .00 | .00 | .00 / .00 | -2,349.96 / 457.20 |
| 04/10/2015 | REGULAR PAYMENT | 783.32 | 08/2012 | 140.38 / 101,008.84 | 389.85 | 253.09 / -8,426.00 | .00 | .00 | .00 / .00 | .00 / 457.20 |
| 04/10/2015 | REGULAR PAYMENT | 783.32 | 09/2012 | 140.93 / 100,867.91 | 389.30 | 253.09 / -8,172.91 | .00 | .00 | .00 / .00 | .00 / 457.20 |
| 04/10/2015 | REGULAR PAYMENT | 783.32 | 10/2012 | 141.47 / 100,726.44 | 388.76 | 253.09 / -7,919.82 | .00 | .00 | .00 / .00 | .00 / 457.20 |

**Fee Transaction Activity (01/1986 - 09/2015)**

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 12/14/2001 | Mortgage Pay Fee-Web | 5.00 | .00 |
| 12/14/2001 | Mortgage Pay Fee-Web | .00 | 5.00 |
| 01/16/2002 | Mortgage Pay Fee-Web | 5.00 | .00 |
| 01/16/2002 | Mortgage Pay Fee-Web | .00 | 5.00 |
| 02/15/2002 | Mortgage Pay Fee-Web | 5.00 | .00 |
| 02/15/2002 | Mortgage Pay Fee-Web | .00 | 5.00 |
| 03/15/2002 | Mortgage Pay Fee-Web | 5.00 | .00 |
| 03/15/2002 | Mortgage Pay Fee-Web | .00 | 5.00 |
| 04/15/2002 | Mortgage Pay Fee-Web | 5.00 | .00 |
| 04/15/2002 | Mortgage Pay Fee-Web | .00 | 5.00 |

**BANA 1571**