FILED
2017 Feb-14  AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL ADAMS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:15-01855-RDP** |
| | } | |
| **BANK OF AMERICA, N.A.,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

## I.    Introduction

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 30), filed on August 1, 2016.  The Motion is fully briefed and supported by the parties' evidentiary submissions.  (Docs. # 31, 39, 40).  In this case, Plaintiffs are two borrowers whose loan is owned and serviced by Defendant.  Beginning in 2004, Plaintiffs began having difficulties making their monthly mortgage payments.  The parties executed multiple loan modifications. Nevertheless, Defendant contends that Plaintiffs regularly missed loan payments.  Accordingly, Defendant provided notice to Plaintiffs that they were in default and later began foreclosure proceedings.  Plaintiffs filed this lawsuit and allege that Defendant's conduct amounted to a breach of the mortgage contract.  Plaintiffs further allege that Defendant's conduct was in violation of various federal statutes related to lending practices, and additionally contend that Defendant's publication of communications related to their purported default was defamatory. Defendant's Motion for Summary Judgment (Doc. # 30) is due to be granted.

## II.    Relevant Undisputed Facts[1]

On October 25, 2001, Plaintiffs executed a promissory note which was secured by a mortgage on real property located in Bessemer, Alabama.  (Doc. # 31-2 at ¶ 5; Doc. # 31-5 at p. 7).  On July 1, 2011, Defendant succeeded to the interests of BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, the original entity servicing the Loan, and, accordingly, has serviced the Loan since its origination.  (Doc. # 31-7 at p. 7; 31-2 at ¶ 6).  The beneficial ownership and accompanying rights and obligations under the Mortgage were assigned to Defendant on August 2, 2011.  (*Id.* at ¶ 6; Doc # 31-8 at p. 14).

In 2004, Plaintiffs fell behind on their monthly mortgage payments and faced acceleration and foreclosure based on their default.  (Doc. # 31-2 at ¶ 8; 31-7 at p. 8).  Wishing to avoid this result, Plaintiffs sought from Defendant a loan modification agreement and the parties ultimately agreed to and executed an amended restated Note on October 8, 2004.  (Doc. # 31-2 at ¶ 9; Doc. # 31-3 at p. 13; Doc. # 31-8 at pp. 19-21, 23-25).  Nonetheless, Plaintiffs continued to struggle to make their mortgage payments, and on August 29, 2011, the parties agreed to and executed a second loan modification agreement and amended and restated Note.  (Doc. # 31-2 at ¶ 11; Doc. # 31-3 at p. 19; Doc. 31-8 at pp. 32-36, 38-42).  Defendant has held the amended and restated Note since its execution.  (Doc. # 31-2 at ¶ 11).

Following this second Loan Modification, Plaintiffs again struggled to make their mortgage payments.  (Doc. # 31-3 at p. 21).  In fact, Defendants contend that Plaintiffs only attempted to make two mortgage payments from the time period spanning August 1, 2012 –

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

November 25, 2014.  (Doc. # 31-2 at ¶ 12; Doc. # 31-8 at pp. 44-61).  The first of these payments was offered on September 7, 2012, and was only in the amount of $400, which was less than a full mortgage payment.[2]  (Doc. # 31-2 at ¶ 12).  Defendant contends that Plaintiffs attempted to make the second of these payments on January 31, 2013, but their check was returned for insufficient funds in Plaintiffs' bank account. (Doc. # 31-2 at ¶ 12).  Plaintiffs, in their Response (Doc. 39), dispute that they failed to make their monthly mortgage payments, but cite only generally to their depositions and affidavits for support of that position.[3]

On September 17, 2012, in response to Plaintiffs' failure to make mortgage payments, Defendant sent Plaintiffs a notice of intent to accelerate the Loan.  (Doc. # 31-7 at p. 26; Doc. # 31-9 at pp. 2-3).  Defendant sent a letter offering to schedule a face-to-face meeting to discuss the possibility of loan assistance; however, Plaintiffs did not schedule a meeting, and representatives from Defendant were unsuccessful in their attempts to meet Plaintiffs at the property.  (Doc. # 31-2 at ¶ 14; Doc. # 31-9 at p. 5).

On April 1, 2013, March 8, 2014, and July 21, 2014, Plaintiffs submitted applications to be considered for a third loan modification.  (Doc. # 31-2 at ¶ 15; Doc. # 31-9 at pp. 8-11, 14-20, 22-27).  On each of these signed applications, Plaintiffs provided their cellphone numbers and, in signing, acknowledged, "I consent to being contacted concerning this request for mortgage assistance at any e-mail addresses or cellular or mobile telephone I have provided to the Servicer."  (Doc. # 31-3 at p. 4; Doc. # 31-5 at p. 3; Doc. # 31-9 at pp. 8-11, 14-20, 22-27).  On

---

[2]  Under the terms of the 2011 Loan Modification, Plaintiffs' monthly principal and interest payment was $530.23.  (Doc. # 31-8 at pp. 32-36, 38-42).

[3]  With the exception of certain citations on page fourteen of the Plaintiffs' Response (Doc. # 39 at p. 14) -- which appear to reference Plaintiff Natalie Adams's deposition -- Plaintiff's Response offers no direct citation to the record.  (*E.g.* Doc. # 39 at pp. 3-4).  Rather, when offering citations, they allude only generally to "Plaintiffs' affidavit and depositions."  (*Id.*).  As to Plaintiffs' conclusory argument that they timely made their monthly mortgage payments, their depositions tell a wholly different a different story.  In his deposition, Plaintiff Michael Adams admitted that Plaintiffs have not made a mortgage payment since April 10, 2015, and further stated that Plaintiffs only tried to make "some payments" in 2014.  (Doc. # 31-3 at pp. 14-15).

September 3, 2014, Defendant offered Plaintiffs a "Trial Period Plan" as a potential means of securing a permanent loan modification. (Doc. # 31-2 at ¶ 17; Doc. # 31-9 at pp. 29-30). Under the Trial Period Plan, Plaintiffs were required to return a signed copy of the Trial Period Plan Agreement by October 3, 2014 and remit three payments of $935.72 on October 1, 2014, November 1, 2014, and December 1, 2014, respectively. (*Id.*).

Defendant contends that it never received an executed copy of the Trial Period Plan Agreement and Plaintiffs did not make any of the three Trial Period Plan payments on or before the day that they were due.[4] On April 11, 2015, Defendant did not approve Plaintiffs for an additional loan modification, due to their purported failure to submit timely Trial Period Plan payments. (Doc. # 31-2 at ¶ 20, Doc. # 31-9 at pp. 36-37).

Defendant scheduled a foreclosure sale of the property to be held in June 2015. (Doc. # 39-1 at pp. 2, 4). Accordingly, Plaintiffs hired legal counsel for representation related to the scheduled foreclosure. (Doc. 31-6 at p. 2). On July 17, 2015, Plaintiffs, through counsel, sent a Qualified Written Request ("QWR") to Defendant.[5] (Doc. # 31-2 at ¶ 21, Doc. # 31-9 at pp. 39-40). Defendant contends that it acknowledged receipt of the QWR, and, on August 21, 2015, sent a letter responding to Plaintiffs' QWR. (Doc. 31-2 at ¶ 21; Doc. 31-9 at pp. 42-43, 45-47). Plaintiffs disagree, and contend that they have no personal knowledge of receiving Defendant's correspondence. (Doc. # 31-3 at pp. 24-25).

Additionally, Plaintiffs attempted to dispute their credit report with Defendant. (Doc. # 31-5 at p. 19). However, Plaintiffs admit that they never attempted to notify a consumer

---

[4] Specifically, Defendant's records show that Plaintiffs did not make a Trial Period Plan payment in October 2014, did not make their November Trial Period Plan payment until November 26, 2014, and did not make another Trial Period Plan Payment until January 2, 2015. (Doc. # 31-2 at ¶ 19; Doc. # 31-8 at pp. 44-61).

[5] Plaintiffs admit that they did not send any additional QWRs to Defendant beyond the QWR dated July 17, 2015. (Doc. # 39 at p. 3).

reporting agency about their disputed credit, and Defendant received no notice from a consumer reporting agency about a credit dispute concerning the Loan. (*Id.*; Doc. # 31-6 at p. 4; Doc. # 31-2 at ¶ 22). Defendant did not conduct a foreclosure sale on the Property, and no entity, including Defendant, has attempted to complete a foreclosure sale following the initiation of the present lawsuit. (Doc. # 31-2 at ¶ 23, Doc. # 31-6 at p. 2). Plaintiffs are not currently making any monthly mortgage payments on the Loan, and Defendants contend that the Loan is currently in default because of Plaintiffs' missed payments.[6] (Doc. # 31-3 at p. 14; Doc. # 31-2 at ¶ 24; Doc. # 31-8 at pp. 41-61).

## III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

---

[6] As mentioned above, Defendant has provided Rule 56 evidence that Plaintiffs failed to make a single mortgage payment from August 1, 2012 – November 25, 2014 (a 27-month time span). (Doc. # 31-2 at ¶ 12; Doc. # 31-8 at pp. 44-61). Defendant has further provided evidence that Plaintiffs failed to make each of their three required Trial Period Plan Payments on time, and that Plaintiffs have not made a mortgage payment since April 10, 2015 (which was five months prior to filing this lawsuit, in September 2015). (Doc. # 31-2 at ¶ 40; 31-3 at pp. 14-15).

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

6

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.    Analysis

Plaintiffs' Second Amended Complaint asserts claims against Defendant for breach of contract; defamation, libel, and slander; violations of the Truth in Lending Act; violations of the Real Estate Settlement Procedures Act; violations of the Fair Credit Reporting Act; violations of the Fair Debt Collection Practices Act; violations of the Telephone Consumer Protection Act; and violations of the Equal Credit Opportunity Act. (Doc. # 24). Defendant's Motion for Summary Judgment addresses each of these claims, argues that Plaintiffs cannot point to any disputed material facts, and contends it is entitled to judgment as a matter of law on each of Plaintiffs' claims. (Doc. # 31). After careful review, the court concludes Defendant is entitled to summary judgment on Plaintiffs' claims.

### A.    Defendant is Entitled to Judgment on Plaintiffs' Breach of Contract Claim

Defendant argues that Plaintiffs have not carried their burden of establishing that Defendant's conduct amounted to a breach of contract. The court agrees. Plaintiffs premise their breach of contract claim on a number of contentions. Specifically, they allege that Defendant breached the mortgage contract by failing to adhere to the appropriate HUD rules and

regulations related to foreclosures and loss mitigation.  (Doc. # 24 at p. 7).  The Mortgage contract incorporates relevant HUD rules and regulations into the agreement, and those rules require a mortgagor to offer loss mitigation options prior to instituting foreclosure proceedings. (*Id.*; Doc. # 31-8 at p. 8).  Plaintiffs contend that Defendant failed to comply with these HUD regulations, alleging that Defendant: never provided them with the required letters about options to prevent foreclosure; never attempted to set up a face-to-face interview with Plaintiffs; did not consider other options in lieu of foreclosure (and failed to keep a complete audit confirming its compliance with this HUD regulation); and never sent Plaintiff a copy of HUD publication PA 426-H, May 19, 1997, *How to Avoid Foreclosure*.  (Doc. # 24 at pp. 6-7).  In further support of its breach of contract claim, Plaintiffs allege that Defendant failed to apply their monthly mortgage payments in violation of the terms of the Note and the Mortgage.  (*Id.* at p. 6).  They contend that Defendant failed to send proper notice of their default and its intent to accelerate the Loan, and conclude by stating that they are not in default and have made payments every month as required by the Mortgage Note.  (*Id.* at p. 7).

### 1.    Relevant Law and Facts

The 2011 Loan Modification is the controlling contract in this case.  Defendant states it would have offered Plaintiffs a third loan modification, if Plaintiffs had completed the Trial Period Plan.  (Doc. # 31-2 ¶ 20; Doc. # 31-9 at pp. 36-37).  While the parties disagree about whether Plaintiffs complied with the requirements of the Trial Period Plan, it is undisputed that Defendant did not ultimately offer a third loan modification; accordingly, it is the 2011 Loan Modification which controls.  (*See* Doc. # 39 at p. 3).

To prove a breach of contract claim in Alabama, a plaintiff must establish: "(1) a valid contract binding the parties; (2) the [claimant's] performance under the contract; (3) the

defendant's nonperformance; and (4) resulting damages." *Capmark Bank v. RGR, LLC*, 81 So.3d 1258, 1267 (Ala. 2011) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

### 2. Defendant is Entitled to Judgment on Plaintiffs' Breach of Contract Argument Premised on Compliance with HUD Regulations

It is axiomatic that there is no express or implied statutory private right of action for HUD violations. *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977)[7] ("The National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow."). However, Plaintiffs' breach of contract argument arises not from a purported private action based on HUD violations, but instead out of the language of the contract itself. In relevant part, the Mortgage contract states as follows:

> **Regulations of HUD Secretary**. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(Doc. # 31-8 at p. 8). Accordingly, Plaintiffs contend that they are permitted to assert breach of contract claims premised on Defendant's failure to comply with the regulations promulgated by HUD.

Plaintiff's argument relates to a subject about which state courts are split. A number of states have held that a mortgagor has a cause of action under state law for a breach of contract where the contract, as in this instance, expressly conditions non judicial foreclosure on compliance with HUD regulations. *See In re Silveira*, 2013 WL 1867472, at *13 (Bankr. Mass.

---

[7] The Eleventh Circuit recognizes all of the Fifth Circuit decisions rendered prior to the close of business on September 30, 1981, as binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

May 3, 2013); *BAC Home Loans Servicing, LP v. Taylor*, 986 N.E.2d 1028, 1033–34 (Ohio Ct.App.2013); *Mathews v. PHH Mortg. Corp*, 283 Va. 723 (2012). In fact, when applying Georgia law, the Eleventh Circuit has held that such a cause of action exists. *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1132 (11th Cir. 2014) (finding that, under Georgia law, "a contractual obligation to comply with the regulations existed."). By contrast, other courts have refused to recognize such claims. *Dixon v. Wells Fargo Bank, N.A.*, 2012 WL 4450502, at *8 (E.D.Mich. Sept. 25, 2012); *Mitchell v. Chase Home Fin. LLC*, 2008 WL 623395, at *4 (N.D.Tex. March 4, 2008); *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705 (2007).

A survey of Alabama law, which controls in this case, appears to indicate that Alabama allows no such breach of contract action. The Court of Civil Appeals of Alabama was presented with a similar issue, albeit in a different procedural posture, in *Campbell v. Bank of America, N.A.*, 141 So.3d 492 (Ala. Civ. App. 2012). In *Campbell*, the court was tasked with determining whether a debtor, whose mortgage contract required the lender to comply with HUD loss-mitigation procedures, could assert the mortgagee's failure to follow those procedures as a defense to an ejectment action. *Id.* at 494. The court began its analysis by noting the distinction between void and voidable acts under Alabama law. *Id.* While void acts can be assailed in any proceeding (including collateral proceedings), voidable acts, orders, and judgments may only be assailed in a direct proceeding. *Id.* at 494-95 (quoting *Alexander v. Nelson*, 42 Ala. 462, 469 (1868)). Under Alabama law, only four circumstances render a foreclosure sale void: (1) when the foreclosing entity does not have the legal right to exercise the power of sale, as for example, when the entity is neither the assignee of the mortgage, nor the holder of the promissory notes, at the time of the foreclosure proceedings; (2) when the debt secured by the mortgage was fully paid prior to foreclosure; (3) when the foreclosing entity failed to give notice of the time and

place of the foreclosure sale; and (4) when the purchase price paid is so inadequate as to shock the conscience. *Id.* at 495-96. Accordingly, the *Campbell* court determined that a mortgagee's failure to comply with HUD loss-mitigation procedures, even where those procedures are incorporated into the mortgage contract, does not render a foreclosure void. *Id.* at 496-97. Instead, the court held that a mortgagee's failure to comply with HUD regulations would at most render a foreclosure sale voidable, and could not be asserted as a defense to an ejectment action. *Id.* at 496.

While the *Campbell* Plaintiffs filed suit in response to an ejectment action, rather than filing a pre-foreclosure sale breach of contract claim (as Plaintiffs have done here), the *Campbell* court's reasoning is nonetheless informative. The *Campbell* Plaintiffs argued that their mortgage instrument incorporated the HUD regulations, and that this supported their claim for relief. *Id.* at 497. However, the court favorably cited *Neal* for the proposition that "a mortgagor 'may not advance, as an affirmative cause of action, a State law contract claim based on an asserted breach of the HUD regulations alluded to in his FHA form deed of trust, but may raise a violation of the regulations in pursuit of an injunction blocking foreclosure." *Id.* at 497 (quoting 398 Md. at 711). The *Neal* court reasoned, and the *Campbell* court quoted in turn, that "the regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee." *Id.* at 498 (quoting 398 Md. 719-20). From its discussion of *Neal*, the *Campbell* court concluded that a mortgagor whose mortgage instrument incorporates HUD regulations may assert the mortgagee's failure to comply with those regulations either as a defense in actions to set aside a foreclosure sale or in a pre-foreclosure action seeking injunctive relief (*i.e.*, to halt the foreclosure sale). *Id.* at 499.

Conspicuously absent from the *Campbell* court's discussion is any determination that a mortgagor may maintain a breach of contract action against a mortgagee for a failure to comply with HUD regulations, particularly in those instances where those regulations are incorporated into the standard FHA contract. To the contrary, *Campbell* extensively cites *Neal* for the premise that, based on the purposes of the HUD regulations, no such breach of contract action can exist.[8] *Id.* at 498. Accordingly, the court finds that, under Alabama law, Plaintiffs have no claim for a breach of contract predicated on Defendant's purported failure to comply with HUD regulations. To be sure, Plaintiffs could raise such a claim as a "shield" to form the basis of pre-foreclosure sale injunctive relief or to set aside a foreclosure sale.[9] However, no such foreclosure sale has been conducted, and Plaintiffs assert no claim for injunctive relief in this action. The court reads *Campbell* to at least indicate that Plaintiffs may not assert a HUD-compliance based breach of contract claim as a sword to attack Defendant. Accordingly, Defendant is entitled to summary judgment against Plaintiffs as to the HUD-compliance basis of their breach of contract claim.

Alternatively, even if the court concluded that, under Alabama law, a contract which purports to incorporate HUD regulations allows for a "HUD-based" contractual remedy, Defendant would nonetheless be entitled to summary judgment as to Plaintiffs' breach of

---

[8] Indeed, this is consistent with *Campbell*'s analysis of the distinction between void and voidable actions. Only in certain distinct instances -- namely, when the conduct at issue renders the foreclosure void -- may a mortgagor collaterally attack a mortgagee's conduct with respect to the foreclosure. *Campbell*, 141 So.3d at 494. In any other circumstance, a plaintiff must attack the conduct by way of a direct proceeding.

[9] Much of Plaintiffs' argument centers on the premise that a number of courts have held that a mortgagor may assert a mortgagee's noncompliance with HUD regulations as an affirmative defense in a foreclosure proceedings. (*See* Doc. # 39 at pp. 12-13). For example, Plaintiffs argue that "[a]lthough there is no Alabama Supreme Court precedent on the subject, the weight of current authority in other jurisdictions is that although the regulations do not create a private cause of action for damages, violations by lenders of the regulations pertaining to loss mitigation can be raised as an equitable defense in a foreclosure action." (Doc. # 39 at p. 13). To be sure, this opinion does not question that premise, and instead holds only that Plaintiffs' arguments do not form a basis for relief under *contract* law: the sole means by which they seek relief with respect to Defendant's compliance with HUD regulations. Here, there is no foreclosure sale that has occurred (or even been scheduled) that must be set aside. (*See* Doc. # 31-2 at ¶ 23).

contract claims.  Plaintiffs allege that Defendant did not provide them with a copy of HUD

publication PA 426-H, May 19, 1997, *How to Avoid Foreclosure* and failed to conduct proper

loss mitigation prior to foreclosing on their home.  While Plaintiffs claim that 24 C.F.R. §

203.602 required Defendant to provide Plaintiffs with a copy of the *How to Avoid Foreclosure*

publication, the plain text of the regulation demonstrates that no such requirement exists.[10]

Further, Plaintiffs contend that Defendant was required to offer them all of the loss mitigation

alternatives and programs described in the regulations before it could accelerate the Loan.  (Doc.

# 39 at p. 14, n. 6 (citing 24 C.F.R. §§ 203.356, 203.370, 203.414, 203.512, 203.471, 203.614,

203.616)).  While Plaintiffs' affidavits provide evidence that Defendant did not offer *every*

available loss mitigation alternative, this alone does not establish that Defendant failed to comply

with HUD regulations, even if they are applicable.

> What the regulations actually provide for with regard to loss mitigation is the following:
>
> Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616.

24 C.F.R. § 203.501.  Contrary to Plaintiffs' assertion, Defendant was not required to offer every

loss mitigation alternative described in the regulations in order to comply with HUD

requirements.  Instead, the regulations required only that Defendant "take those appropriate

actions which can reasonably be expected to generate the smallest financial loss to the

---

[10] The regulation states: "The mortgagee shall give notice to each mortgagor in default on a form supplied by the Secretary or, if the mortgagee wishes to use its own form, on a form approved by the Secretary, no later than the end of the second month of any delinquency in payments under the mortgage. If an account is reinstated and again becomes delinquent, the delinquency notice shall be sent to the mortgagor again, except that the mortgagee is not required to send a second delinquency notice to the same mortgagor more often than once each six months. The mortgagee may issue additional or more frequent notices of delinquency at its option."  24 C.F.R. § 203.602. Plaintiffs have not produced any evidence that Defendant failed to comply with this regulation in its entirety.

Department." *Id.*  Here, the undisputed evidence establishes that Defendant offered a number of loss mitigation options to Plaintiffs.  The Rule 56 evidence establishes that Defendant entered into two different loan modification agreements (Docs. # 31-2 at ¶ 9; 31-3 at p. 13; 31-8 at pp. 19-21, 23-25; 31-2 at ¶ 11; 31-3 at p. 19; 31-8 at pp. 32-36, 38-42); attempted to meet face-to-face with Plaintiffs (Doc. # 31-2 at ¶ 14; Doc. # 31-9); and offered a number of other solutions, including a partial claim (Doc. # 31-7 at p. 12), short sale (Doc. # 31-9 at pp. 36-37), and deed in lieu of foreclosure (*Id.*).  Accordingly, Plaintiffs have failed to demonstrate a genuine dispute regarding Defendant's compliance with HUD regulations.  Defendant offered Plaintiffs -- who had defaulted on the Loan multiple times -- a number of loss mitigation alternatives in lieu of foreclosure.  The undisputed Rule 56 evidence on the record clearly demonstrates that the neither the contract in this case, nor HUD's regulations, provide a basis for Plaintiffs' breach of contract action.  Defendant is entitled to summary judgment against Plaintiffs as to the HUD-compliance basis of their breach of contract claim.

### 3) Defendant is Entitled to Judgment on Plaintiffs' Other Breach of Contract Allegations

In addition to alleging that Defendant failed to comply with HUD regulations, Plaintiffs also assert that it breached their contract by failing to apply their monthly mortgage payments in violation of the terms of the Note and the Mortgage.  (Doc. # 24 at ¶ 28).  They further contend that Defendant failed to send proper notice of their default and its intent to accelerate the Loan. (*Id.* at ¶¶ 29-31).  And, they assert they are not in default and have made payments every month as required by the Mortgage Note.  (*Id.*).  However, the record demonstrates that there is no genuine dispute of material fact as to any of these allegations.

While Plaintiffs allege that Defendant failed to apply their monthly mortgage payments, they provide no evidence at all to support that contention.  Their denials are conclusory and their

affidavits make no mention of any failure on Defendant's part to apply their mortgage payments as they were made. (*See* Docs. # 39-1; 39-2). By contrast, Defendant has pointed to specific Rule 56 evidence that it appropriately applied each full payment made (including those about which Plaintiffs expressed concern in their depositions).

In light of the undisputed evidence in the record, it appears that Plaintiffs allege that the following payments were improperly returned to them and not credited to their account: their September 7, 2012 payment (Doc. # 31-3 at p. 22), January 31, 2013 payment (Doc. # 31-3 at p. 23), and January 2015 payment (Doc. # 24 at ¶ 28). Indeed, Defendant has provided summary judgment evidence as to each of these contentions, which Plaintiffs have failed to rebut. More specifically, Defendant has pointed to Rule 56 evidence that Plaintiffs' September 7, 2012 payment was a check for $400, which Defendant returned because it was not enough for a full mortgage payment. (Doc. # 31-2 at ¶ 12). Defendant has provided evidence that Plaintiffs' January 31, 2013 payment was a check that "bounced" – it was not applied due to the insufficient funds in Plaintiffs' bank account. (*Id.*). Finally, Defendant has provided evidence that it applied Plaintiffs' payment of $935.72 on January 2, 2015, which was the day that it was received. (Doc. # 31-2 at ¶ 19; Doc. # 31-8 at pp. 44-61). In their Response brief (Doc. # 39), Plaintiffs do not direct the court to any evidence in the record that would dispute the evidence that Defendant offered regarding their payment history and the application of their payments. To the contrary, their deposition testimony demonstrates that they do not have documentation (or any other evidence) of any misapplied payments nor do they have knowledge of specific payments (besides those mentioned above) that were returned to them. (Doc. # 31-3 at pp. 22-23). Accordingly, there is no genuine dispute of material fact with respect to allegedly misapplied

payments, and the misapplication of payments cannot serve as a basis for Plaintiffs' breach of contract claims.

Similarly, when faced with Defendant's undisputed evidence on the issue of Defendant's notice of intent to accelerate and Plaintiffs' default, Plaintiffs have failed to direct the court to any evidence to demonstrate the existence of a dispute with respect to that issue.  Plaintiffs contend that they did not receive notice of Defendant's intent to accelerate, but that bald contention is actually undone by their own Second Amended Complaint, which admits that Plaintiffs received notice from Defendant that they were in default and that Defendant had accelerated the Loan.  (Doc. # 24 at ¶ 81).  Further, while Plaintiffs assert in their Second Amended Complaint that they have "made payments every month as required by the mortgage and note and are not behind on their mortgage payments," the undisputed summary judgment evidence tells a different story.  (Doc. # 24 at ¶ 31).  Indeed, Plaintiff Michael Adams admitted that Plaintiffs have not made a mortgage payment since April 10, 2015, and further stated that Plaintiffs only tried to make "some payments" in 2014.  (Doc. # 31-3 at pp. 14-15).  There is no dispute of material fact with respect to Plaintiffs failure to pay a number of their monthly mortgage payments.  Their *allegation* in their Second Amended Complaint that they made all of their payments and were not in default provides no basis for denying Defendant's Motion for summary judgment.  As such, Defendant's Motion is due to be granted as to Plaintiffs' breach of contract claim.

> **B.      Defendant is Entitled to Judgment on Plaintiffs' Defamation, Libel, and Slander Claim**

Plaintiffs base their defamation, libel, and slander claim on their contention that Defendant falsely published in the newspaper and on the internet that Plaintiffs were in default, and that it had a right to conduct a foreclosure sale on Plaintiffs' property.  Plaintiffs contend that

they "were current on their mortgage account and… made payments each and every month." (Doc. # 24 at ¶ 33).  "There are two types of defamation: libel, which involves the use of print media to publish the defamatory comment, and slander, which involves the oral expression of a defamatory comment."  *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999).  Whether proceeding under a theory of libel or slander, the elements of a cause of action for defamation are the same:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement."

*Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003) (quoting *McCaig v. Talladega Publ'g Co.*, 544 So.2d 875, 877 (Ala. 1989)).

In its Motion for Summary Judgment, Defendant argues that Plaintiffs' defamation claim fails because everything it published concerning Plaintiffs and the scheduled foreclosure was truthful.  (*See* Doc. # 31 at p. 16).  The court agrees.  Plaintiffs premise their argument on the rationale that, if the court finds that the Loan was not in default and improperly accelerated, then, in turn, Defendant's publication of notice of the foreclosure sale would be false and defamatory. This argument has at least two fatal flaws.  First, as mentioned above, the Rule 56 evidence establishes without dispute that Plaintiffs failed to make a number of their mortgage payments, rendering them in default on their Loan.  (Doc. # 31-2 at ¶ 12; Doc. # 31-3 at pp. 14-15). Accordingly, there is no genuine dispute of material fact as to the truth of Defendant's statements about Plaintiff's default.  Second, under Alabama law, the holder of a negotiable instrument (*i.e.,* here, the Note) is entitled to enforce the instrument and initiate foreclosure proceedings. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 696 (11th Cir. 2015) (quoting *Thomas v.*

*Wells Fargo Bank, N.A.*, 116 So. 3d 226, 233 (Ala. Civ. App. 2012)).  As such, Defendant, as the holder of the Note, had a right to foreclose on the property after the Plaintiffs defaulted.  (Doc. # 31-2 at ¶ 11; Doc. # 31-8 at pp. 38-42).  There is simply no genuine issue of material fact as to the truthfulness of Defendant's alleged statements.[11]  Defendant's Motion is due to be granted as to Plaintiffs' defamation, libel, and slander claim.

And even more fundamentally, Plaintiffs have provided no evidence on the record at all of any actual statement made by Defendant.  While they provide a brief summary of the statements purportedly published by Defendant in their argument, they offer no actual evidence (*e.g.*, a replication of the statements, a copy of the published statements) of the statements themselves or their contents.  Having offered no proof sufficient to meet the elements of a defamation claim, Plaintiffs have failed to establish to establish a genuine dispute of material fact as to Count Two of their Second Amended Complaint.

## C.    Defendant is Entitled to Judgment on Plaintiffs' Truth in Lending Claim

Plaintiffs have alleged that Defendant is a "creditor" as defined by the Truth in Lending Act ("TILA") 15 U.S.C. 1601 *et seq.*, and that it failed to provide proper notices and disclosures as required by TILA and Regulation Z.  (Doc. # 24 at ¶¶ 46-56).  In its Motion for Summary Judgment, Defendant argues that Plaintiffs' TILA claim fails because (1) it is time-barred by TILA's one-year statute of limitations, and, in any event, (2) Defendant is not a "creditor" as

---

[11] Plaintiffs also contend that "[a]cceleration is prohibited by the mortgage contract and the Note unless mandated HUD loss mitigation regulations have been properly followed.  Such is the case here, so acceleration was not allowed, was improper, and defamation occurred as a result."  (Doc. # 39 at fn. 8).  Plaintiffs are mistaken, however.  As detailed above, Plaintiffs have not demonstrated that the Loan was wrongfully accelerated.  Further, Plaintiffs fail to provide any Rule 56 evidence purporting to establish that Defendant mentioned the acceleration of the loan or the procedures it took following Plaintiffs' default.

defined by the Act.  (Doc. # 31 at p. 18).  In their response, Plaintiffs make no argument at all in support of their Truth in Lending Act claim.[12]

A party that fails to defend a claim that is targeted by a summary judgment motion is deemed to have abandoned that claim.  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned, and affirming grant of summary judgment, as to claim presented in complaint but not raised in initial response to motion for summary judgment); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding claim abandoned where it was not briefed and argued in district court in party's response to motion for summary judgment or in party's own motion for summary judgment); *see also Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (11th Cir.1999) (affirming "the unremarkable position that assertions made in the pleadings (e.g., complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.'  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  Because Plaintiffs have abandoned their Truth in Lending Act claim, Defendant is entitled to summary judgment as to Count Three of Plaintiffs' Amended Complaint.

---

[12]  Plaintiffs, in their response (Doc. # 39), make no mention of their claims under the Truth in Lending Act (Count Three), the Fair Debt Collection Practices Act (Count Six), and the Telephone Consumer Protection Act (Count Seven).

In the alternative, even if the court were to consider the merits of Plaintiffs' Truth in Lending Act claim (and to be sure, it need not), Defendant would nonetheless still be entitled to summary judgment on that claim.  TILA requires creditors to provide lenders with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights," including the right of rescission. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  "Pursuant to § 1640(e), all TILA claims must be brought 'within one year from the date of the occurrence of the violation.' 15 U.S.C. § 1640(e). The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations."[13]  *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892 (11th Cir. 2008).   Accordingly, the latest possible date where a credit action was "consummated" between Defendant and Plaintiffs was on August 29, 2011, when the parties modified the Mortgage and Note by mutual agreement.  (*See* Doc. # 31-2 at ¶ 11; Doc. # 31-8 at pp. 32-36).  Plaintiffs' originally brought this suit in state court on September 20, 2015 (Doc. # 1-1), well after the August 29, 2012 deadline imposed by the statute of limitations.  As such, Defendant is additionally entitled to summary judgment as to Count Three of Plaintiffs' Amended Complaint because Plaintiffs' TILA claim is time-barred.

Finally, TILA provides a two-part inquiry used to define who is a "creditor" under the Act.  Under the Act, a "creditor" refers only to a person who (1) regularly extends consumer credit, and "(2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(g).  Here, the Rule 56 evidence is clear that Defendant does not satisfy the second prong of TILA's "creditor"

---

[13] TILA's one-year statute of limitations applies when a plaintiff is affirmatively seeking money damages. *Dixon v. Countrywide Home Loans, Inc.*, 710 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010) ("Where monetary damages for violations of TILA are sought, there is a one-year statute of limitations.").  Plaintiffs' Second Amended Complaint makes clear that their TILA claim "is solely for money damages."  (Doc. # 24 at ¶ 49).

test.  Plaintiffs' Mortgage was originally made in favor of the lender, Mortgage Electronic Registration Systems, Inc., solely as nominee for Countrywide Home Loans, Inc.  (Doc. # 31-2 at ¶ 5).  Notably, Countrywide Home Loans, Inc., the original lender, is an entirely different entity than the original mortgage servicer.[14]  (Doc. # 31-2 at ¶¶ 5-6).  Given this distinction, Defendant cannot be considered a "creditor" under TILA because it was Countrywide Home Loans, Inc., and not Defendant, "to whom the debt arising from the consumer credit transaction [was] initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(g).  Accordingly, Defendant is additionally entitled to summary judgment as to Count Three of Plaintiffs' Amended Complaint because Plaintiffs' TILA claim because Defendant is not a "creditor" for purposes of TILA.

### D. Defendant is Entitled to Judgment on Plaintiff's Real Estate Settlement Procedures Act Claim

Plaintiffs argue that Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, by failing to appropriately respond to their Qualified Written Requests ("QWRs").  (Doc. # 24 at ¶ 8).  Plaintiffs contend in their Second Amended Complaint that they made two QWRs to Defendant - one on May 15, 2015 and another on July 17, 2015.  (*Id.* at ¶ 59).  They further allege that Defendant failed to properly acknowledge or respond to those QWRs in violation of RESPA.  (*Id.*).

While Plaintiffs allege in their Second Amended Complaint that they sent two separate QWRs, they have provided no evidence of the existence of a May 15, 2015 QWR; in fact, they admit that they did not submit any other QWRs besides the one from July 17, 2015.  (*See* Doc. #

---

[14] The original mortgage servicer was Countrywide Home Loans Servicing, LP.  (Doc. # 31-2 at ¶¶ 5-6). Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP, and Defendant subsequently succeeded to the interests of BAC Home Loans Servicing, LP.  (*Id.* at ¶ 6).  The original lender, Countrywide Home Loans, Inc., presently exists as an independent entity that never joined or merged with Defendant.  (Doc. # 31-7 at p. 6).

31-4 at p. 1).  As such, the court examines Plaintiff's July 17, 2015 QWR to see if it violates RESPA.

> With respect to QWRs, the relevant statute provides as follows:
>
> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A).  RESPA further requires the servicer to respond, within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from a borrower of a QWR, in one of three ways.  12 U.S.C. § 2605(e)(2).  When a QWR is received, one possible course of action for the servicer is to provide a written explanation to the borrower that includes a statement of reasons why the servicer believes the account is correct and contact information of an individual or department who can provide assistance to the borrower.  12 U.S.C. § 2605(e)(2)(B).

There is no genuine dispute as to any material fact related to Defendant's compliance with RESPA's requirements.  The Rule 56 evidence makes clear that Defendant responded appropriately to Plaintiff's QWR.  Defendant acknowledged Plaintiffs' July 17, 2015 QWR in a communication sent to Plaintiffs' attorney on July 22, 2015.  (Doc. # 31-2 at ¶ 21; Doc. # 31-9 at pp. 42-43).  This written acknowledgement was sent within three business days of July 17, 2015, the date of the QWR; therefore, it was sent in a timely manner pursuant to RESPA's requirements.  *See* 12 U.S.C. § 2605(e).  Defendant also sent a substantive response to Plaintiff's QWR on August 21, 2015; therefore, it was sent within twenty-five (25) business days from July 17, 2015 and complied with the statutory requirements.  (Doc. # 31-2 at ¶ 21; Doc. # 31-9 at pp. 45-47).  *See* 12 U.S.C. § 2605(e).

For their part, Plaintiffs have pointed to no evidence in the Rule 56 file to rebut Defendant's evidence that there was an appropriate and timely response to the QWR.[15] To the contrary, the Plaintiffs offer only this assertion, without any reference to the record or specific evidence: they "haven proven that [they] properly sent [Defendant] a Qualified Written Request and… received no proper response from [Defendant]."  (Doc. # 39 at p. 26).  This conclusory statement aside, Plaintiffs have produced no evidence of the existence of a May 15, 2015 QWR or any evidence that their attorney did not receive Defendant's responses to their QWR. Accordingly, there is no genuine dispute with respect to Plaintiffs' RESPA claim, and Defendant is entitled to summary judgment as to that claim.

### E.    Defendant is Entitled to Judgment as to Plaintiffs' Fair Credit Reporting Act Claims

Plaintiffs allege that Defendant violated the Fair Credit Reporting Act ("FCRA").  15 U.S.C. § 1681 *et seq.*  Their claims fall into two categories.  First, Plaintiffs contend that Defendant inaccurately reported that they were delinquent on their mortgage loan and were in default.  (Doc. # 32 at ¶¶ 61-63).  Second, Plaintiffs assert that Defendant "failed to conduct a reasonable investigation with respect to consumer credit data it reported about the plaintiffs." (*Id.* at ¶ 66).

The FCRA imposes a duty on furnishers (such as Defendant) to provide accurate information to consumer reporting agencies, and further prohibits a furnisher from reporting information that the furnisher knows or has reasonable cause to believe is inaccurate.  15 U.S.C. § 1681s-2(a)(1)(A).  Section 1681s-2(a) further prohibits a furnisher from providing information to a consumer reporting agency if the furnisher has been notified by a consumer that the

---

[15]   The evidence Defendant has provided demonstrates that it sent its responses to Plaintiff's attorney. (Doc. # 31-2 at ¶ 21).  Plaintiffs have offered no evidence to suggest that their attorney did not receive these responses.

information is inaccurate, and the information is in fact inaccurate.  15 U.S.C. § 1681s-2(a)(1)(B)(i), (ii).  Their contentions that Defendant inaccurately reported that they were delinquent on their mortgage and in default fall squarely within the ambit of this statutory provision.  But, it is axiomatic that no private right of action exists for such violations of section 1681s-2(a).  15 U.S.C. § 1681s-2(c)(1); *Peart v. Shippie*, 345 Fed. App'x 384, 386 (11th Cir. 2009).  Accordingly, Plaintiffs have no private right of action as to the first subset of their claims.

Of course, FCRA does provide a private right of action for a violation of section 1681s-2(b).  *Green v. RBS Nat. Bank*, 288 Fed. App'x 641, 642 (11th Cir. 2008); *Peart*, 345 Fed. App'x at 386.  Section 1681s-2(b) requires that, when a consumer reporting agency notifies a furnisher of a dispute regarding its reporting, the furnisher must conduct an investigation to verify the accuracy of that reporting and report the results to the consumer reporting agency.  *See* 15 U..S.C. § 1681s-2(b).  Notably, this obligation is only triggered when the furnisher receives notice from the consumer reporting agency of the consumer's dispute.  *Green*, 288 Fed. App'x at 642.

Plaintiffs, in their Second Amended Complaint, contend that Defendant "failed to conduct a reasonable investigation with respect to consumer credit data it reported about… Plaintiffs." (Doc. # 24 at ¶ 66).  At least in theory, this contention could provide the basis for a private right to relief under section 1681s-2(b); however, the Rule 56 evidence unequivocally establishes that Plaintiffs never contacted a consumer reporting agency.  Defendant contends that it "has no record of receiving any notice from a consumer reporting agency about a credit dispute concerning the Loan." (Doc. # 31-2 at ¶ 22).  Further, Plaintiffs themselves admit that they never attempted to contact a consumer reporting agency to dispute the status of their credit

report.  (Doc. # 31-3 at p. 19; Doc. # 31-6 at p. 46).  Accordingly, it is undisputed that Plaintiffs never contacted a consumer reporting agency.  Therefore, Defendant's obligation to conduct an investigation under section 1681s-2(b) was never triggered.  Because there is no private cause of action under section 1681s-2(a), and because the Rule 56 evidence demonstrates that Defendant had no duty under section 1681s-2(b), Defendant is entitled to summary judgment as to the claims in Count Five of Plaintiffs' Amended Complaint.

> **F.     Defendant is Entitled to Judgment on Plaintiffs' Fair Debt Collection Practices Act Claim**

In Count Six of their Amended Complaint, Plaintiffs allege that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, by attempting to collect amounts not owed under the mortgage contract.  Defendant argues in its motion and accompanying brief that there is no genuine dispute of material fact with respect to Plaintiffs' FDCPA claim, and they are entitled to summary judgment as a matter of law on the claim in Count Six of Plaintiffs' Amended Complaint.  (*See* Docs. # 30, 31 at p. 27).  As mentioned above, Plaintiffs make no mention at all of their FDCPA claim or Count Six of their Second Amended Complaint in their summary judgment briefing.  (*See* Doc. # 39).  Accordingly, Plaintiffs have abandoned their FDCPA claim, and Defendant is entitled to summary judgment as to the claims in Count Six of Plaintiffs' Second Amended Complaint.  *Wilkerson*, 270 F.3d at 1322; *Coalition for the Abolition of Marijuana Prohibition*, 219 F.3d at 1325.

Furthermore, even if Plaintiffs had not abandoned their FDCPA claim, Defendant would nonetheless be entitled to summary judgment as to that claim.  "To state a claim under the FDCPA, a plaintiff must establish, among other things, that the defendant is a 'debt collector.'"  *Prickett v. BAC Home Loans & Bank of Am, N.A.*, 946 F. Supp. 2d 1236, 1248 (N.D. Ala. 2013).  A debt collector is anyone whose principal business is the collection of debts or the enforcement

of security instruments or any anyone who regularly collects debts owed to another." *Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 Fed. Appx. 928, 930 (11th Cir. 2015) (citing 15 U.S.C. § 1692a(6)). "[A]n enforcer of a security interest, such as [a mortgage servicing company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)."[16] *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460-61 (11th Cir. 2009) (*per curiam*) (collecting cases); *accord Ausar-El ex el. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 1 (11th Cir. 2011) (*per curiam*) ("an enforcer of a security interest only qualifies as a 'debt collector' for the purpose of § 1692f(6)"); *see also Dunavant v. Sirote & Permutt, P.C.*, 603 Fed. Appx. 737, 739-40 (11th Cir. 2015) (favorably discussing *Warren*'s holding). Further, because the FDCPA "specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6), [this express inclusion] reasonably suggests that such a person is not a debt collector for purposes of other sections of the Act." *Warren*, 342 Fed. Appx. at 460 (citation omitted).

Here, Defendant has serviced the Loan since its origination, as it succeeded to the interests of BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, the original entity servicing the Loan. (Doc. # 31-2 at ¶ 6). Further, Defendant has provided substantial, unrebutted evidence that it had a present right to take possession of the property claimed as collateral, meaning that section 1692f(6) does not apply in this instance. (*See* Doc. # 31-8 at pp. 19-21, 23-25). Accordingly, Defendant is not a "debt collector" for purposes of the FDCPA.

---

[16] Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6).

Finally, the potential foreclosure of Plaintiff's home is not a "debt collection" for purposes of the FDCPA. *See Roberts v. Chase Home Fin.*, No. 12-1883, 2012 WL 2862033, at *2 (N.D. Ala. July 11, 2012) (citing *Warren*, 342 Fed. Appx. at 460-61). "[I]f a person enforcing a security interest is not a debt collector, it likewise is reasonable to conclude that enforcement of a security instrument through the foreclosure process is not debt collection for purposes of the [FDCPA]." *Warren*, 342 Fed. Appx. at 460. Accordingly, Defendant is entitled to summary judgment as to Count Six of Plaintiffs' Second Amended Complaint.

### G. Defendant is Entitled to Judgment on Plaintiffs' Telephone Consumer Protection Act Claim

In Count Seven of their Second Amended Complaint, Plaintiffs' allege that Defendant violated the Telephone Consumer Protection Act ("TCPA"). 47 U.S.C. § 227. Specifically, they assert that Defendant used automatic telephone dialing systems to call Plaintiffs' cell phones between June 2013 and July 2015, and that they never gave Defendant permission to call their cell phones with automated dialing systems. (Doc. # 24 at ¶ 77). Defendant argues in its motion and accompanying brief that there is no genuine dispute of material fact with respect to Plaintiffs' TCPA claim, and that it is entitled to judgment as a matter of law on that claim. (*See* Docs. # 30, 31 at p. 27). As mentioned above, Plaintiffs make no mention at all of their TCPA claim or Count Six of their Second Amended Complaint in their summary judgment briefing. (*See* Doc. # 39). Accordingly, Plaintiffs have abandoned their TCPA claim, and Defendant is entitled to summary judgment as to Count Seven of Plaintiffs' Second Amended Complaint. *Wilkerson*, 270 F.3d at 1322; *Coalition for the Abolition of Marijuana Prohibition*, 219 F.3d at 1325.

But, even if Plaintiffs had not abandoned their TCPA claim, Defendant is still entitled to summary judgment on it. The TCPA does not prohibit a person or organization from making a

call "with the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A).  Defendant

has presented substantial, unrebutted evidence that Plaintiffs provided their written consent to be

contacted by Defendant by phone.  (*See* Docs. # 31-2 at ¶ 16; 31-5 at p. 4; 31-9 at pp. 7-12, 14-

20, 22-27).  Further, Plaintiff has provided no evidence at all that it received phone calls from an

automatic telephone dial system – a required element of their TCPA claim.  *See* 47 U.S.C. §

227(b).  Accordingly, there is no genuine dispute of material fact as to Plaintiffs' TCPA claim,

and Defendant is entitled to summary judgment as to the claim in Count Seven of Plaintiffs'

Second Amended Complaint.

### H.    Defendant is Entitled to Judgment on Plaintiff's Equal Credit Opportunity Act Claim

In their Second Amended Complaint, Plaintiffs contend that Defendant violated the Equal

Credit Opportunity Act ("ECOA").  15 U.S.C. § 1691 *et seq*.  Specifically, Plaintiffs contend that

the ECOA carries with it procedural requirements with which a creditor must comply when it

takes an adverse action against an applicant, and that Defendant failed to comply with these

requirements in violation of the Act.  (Doc. # 24 at ¶¶ 78-82).  Defendant argues that the ECOA

operates as an anti-discrimination statute, and Plaintiffs have failed to prove that it engaged in

any discriminatory conduct.  (Doc. # 31 at p. 31).  In the alternative, Defendant contends that,

should the court disagree with that characterization of the ECOA, Plaintiffs cannot assert a viable

claim for violation of the ECOA under the facts of this case.  (Doc. # 40 at p. 10).

Defendant notes that an ECOA claim must be based on actual discrimination on account

of "race, color, religion, national origin, sex, marital status, or age."  15 U.S.C. § 1691(a).  It

further contends that "discrimination on the basis of some protected class (such as race) is a vital

component to plaintiffs' ECOA claim," and "[t]he ECOA is not a general, catch-all, prophylactic

remedy allowing any disgruntled debtor to sue a creditor for any slight, real or imagined."

*Nicholson v. Johanns*, 2007 WL 3407045, at *5 (S.D. Ala. Nov. 13, 2007).  Without question, discrimination is an essential element that must be established for a claimant to proceed under section 1691(a).  *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1336 (11th Cir. 2000); *Ballerino v. Countrywide Home Loans, Inc.*, 2009 WL 2460739, at *2 (S.D. Fla. July 15, 2009). However, here, Plaintiffs purport to assert a cause of action under section 1691(d), and the plain text of that subsection does not mention discrimination in its description of the notice required under the ECOA.  At least one court has correctly observed that the case law in the Eleventh Circuit is "scant" as to the question of whether a showing of discrimination is required to trigger the protections of section 1691(d).  *Ramos v. Wells Fargo Bank, N.A.*, 2016 WL 233142, at *5 (S.D. Fla. Jan. 13, 2016) (following the logic of *Vasquez v. Bank of America, N.A.*, 2013 WL 6001924, at *11 (N.D.Cal. Nov. 12, 2013) and holding that a plaintiff need not plead that she was a victim of discrimination to state a claim under the ECOA).

In any event, here the court need not determine whether Plaintiffs must prove discrimination to advance their ECOA claim.  This is because the undisputed Rule 56 evidence establishes that Plaintiffs' allegations do not cut ice under the ECOA.

The ECOA's notice provisions provide as follows:

**(1)** Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

**(2)** Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—

**(A)** providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

**(B)** giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt

by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

**(3)** A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

15 U.S.C. § 1691(d).  The Act further defines "adverse action" as follows:

**(6)** For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(6).

Plaintiffs' Second Amended Complaint does not allege that Defendant failed to adequately notify them of any action taken with respect to their multiple applications for a loan modification.[17]  Instead, they only contend that the June 12, 2015 notice of default the Defendants sent them and the notice regarding acceleration of the Loan did not provide them adequate "adverse action notice."  (Doc. # 24 at ¶ 81).  This allegation fails as a matter of law. As a matter of binding precedent, when a debtor is in default at the time her note is accelerated, that acceleration is not an adverse action.  *Haynes v. Bank of Wedowee*, 634 F.2d 266, 272 (5th Cir. 1981).

The *Haynes* holding is wholly consistent with the text of the statute.  Title 15 U.S.C. § 1691(d)(2) applies only to "applicants," and the statute defines an applicant as "any person who

_____

[17]  Indeed, Plaintiffs' affidavits stop far short of alleging any deficiency in the notices Defendant provided them regarding the denial of prospective loan modifications.  (*See* Docs. # 39-1 at p. 2 ("I also applied several more time[s] for a loan modification through the loss mitigation program.  I sent in all the required information, but [Defendant] never gave me the loan modification it had promised.").

applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). It follows that an existing debtor, who alleges only that her mortgagee improperly noticed the acceleration of her loan, is not an applicant against whom an adverse action was taken. *See Gomez v. Bayview Loan Servicing, LLC*, 2015 WL 433669, at *4 (N.D. Cal. Feb. 2, 2015) (finding that a Plaintiff who was in default, who had not alleged an ECOA claim based on an application for a loan modification, was not an "applicant" capable of invoking the protections of the Act).[18] Because Plaintiffs were not "applicants" within the meaning of the Act, and because the Rule 56 evidence establishes beyond dispute that they were in default at the time Defendant accelerated the Loan, Defendant is entitled to summary judgment as to Plaintiffs' ECOA claim.

Additionally, in their Second Amended Complaint, Plaintiffs admit that they received an acceleration notice from Defendant, and that notice included a statement of the reasons why the Loan was being accelerated. (Doc. # 24 at ¶ 81 (stating that Plaintiff's received notice that "due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable.")). In their Response to Defendant's summary judgment motion, Plaintiffs provide no evidence or argument detailing the purported inadequacies of the acceleration notice they claim to have received. (*See* Doc. # 29). Therefore, even if Defendant were required to comply with the ECOA's notice requirements when it accelerated the Loan (and to be sure, it was not), there is no Rule 56 evidence that creates a genuine dispute of material fact regarding Defendant's

---

[18] To be clear, Plaintiffs mention in their affidavits certain applications for loan modifications that they submitted and which Defendant ultimately rejected. (Docs. # 39-1 at p.2, 39-2 at p. 2). However, (1) their Second Amended Complaint premises their ECOA liability theory only on Defendant's allegedly defective acceleration notice, and (2) their affidavits make no assertion that they received improper notice of the applications that they submitted which were ultimately denied. (*Id.*).

compliance.  Defendant is entitled to summary judgment as to the claims made in Count Eight of Plaintiff's Second Amended Complaint.

**V.      Conclusion**

For all these reasons, Defendant's Motion for Summary Judgment (Doc. # 30) is due to be granted.  The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claims and the relief that Plaintiff seeks, and that Defendant is entitled to judgment as a matter of law.  The court will enter an order contemporaneously herewith granting Defendant's Motion for summary judgment.

**DONE** and **ORDERED** this February 14, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE